DEALERS SUPPLY CO., Inc., Complainant-Appellee, v. FIRST CHRISTIAN CHURCH et al., Defendants-Appellants.—276 S. W. (2d) 769.

Eastern Section. November 16, 1954.

Petition for Certiorari denied by Supreme Court, March 11, 1955.

J. F. Wheless, of Chattanooga, for appellants.

Folts, Brammer & Bishop, of Chattanooga, for appellee.

McAMIS, P. J.   The bill in this case was filed by Dealers Supply Co., Inc., of Atlanta, Georgia, against the First Christian Church of Chattanooga, General Air Conditioning Company and L. A. Warlick Contracting Company to enforce a furnisher's lien for materials furnished in the construction of a church building. The Chancellor disallowed certain items claimed in the bill but held complainant entitled to a lien on the building in the amount of $1,-047.77. The First Christian Church and the general contractor, L. A. Warlick Contracting Company, have appealed and contend, as the primary basis for reversal, that the Chancellor erred in holding that complainant gave notice of its lien claim after the completion of the building.

It should be stated at the outset that complainant below, Dealers Supply Co., Inc., did not allege or attempt to prove that it gave notice within 90 days after the last delivery of materials on the job. It relies upon a notice given on May 27, 1952, the date the church building was dedicated. The question is, therefore, whether the building was completed, within the sense of the statute, on that date.

The case was heard before the late Chancellor Zeigler who summed up his findings on that question in a memorandum opinion from which we quote:

"The only serious question as to the lienability of the claim is the timeliness of the notice. Defendants insist that the building was not completed at the time of the notice but in a building of this character it is difficult to determine when absolute completion is attained. There may be a few nails to be driven, a few screws to be set,

a little painting to be touched up or some other triviality; however, in response to the question 'At the time, construction was not finished, was it?', Mr. Atchley replied, 'Still isn't finished * * *.' Perhaps it isn't and possibly it never will be finished to absolute finality but in my opinion, if it is completed sufficiently to justify dedication and to justify the President of the Official Board to say it is practically completed, it is completed to the extent of justifying the contractor to serve notice within ninety (90) days of that time. Luter & Daniel v. Cobb, 1860, 41 Tenn. 525, at page 529.''

The evidence on the question of the completion of the building is, it must be admitted, meager. Mr. Atchley who is a member of the Chattanooga Bar and who was serving at the time as President of the Official Board of the Church testified, as indicated, that the church was practically completed. On cross-examination Mr. Atchley testified:

''For all practical purposes it was completed. I don't remember, I guess some odds and ends, I don't remember exactly. See, I had very little to do with the building construction. I became Chairman of the Board on the first of January. Mr. Nathan Roberts, Chairman of the Building Committee, stayed with that job, and I don't know what the degree of completion was, or whether in Nathan's mind the thing was completed. We turned it over to Nathan and we left it completely up to him, and I'm certainly no authority whether the job was complete on May 27 or whether it wasn't completed on May 27. I have no way of knowing except by what Nathan tells me and I don't believe I've discussed it with Nathan in six months.''

There is no other evidence on the subject although the general contractor testified in the case and, as insisted

in the reply brief, it is of course a fair inference that someone connected with the Church still available as a witness could have spoken with authority on that question. Applying the familiar rule, we think it must be assumed that no such witnesses were introduced because their testimony would have tended to refute the insistence now made by counsel that the building was not completed on the date of the notice.

■■ There is a presumption favoring the correctness of the findings of the Chancellor and clearly such evidence as appears in the record and all the circumstances, notably the fact of dedication, support the hypothesis upon which the decree of the Chancellor is predicated. The assignment that there is no evidence to sustain the finding of the Chancellor that the building was completed on May 27, 1952, must be overruled.

■ It is also strenuously insisted that complainant's claim to a lien on the building must fail because, it is said, the materials were sold on open account and shipped to the subcontractor, General Air Conditioning Company, at its place of business which was not on the church property but considerable distance away; that the materials were there intermingled with other supplies of the General Air Conditioning Company and, if actually placed on the job, later taken from its warehouse and removed to the job; that the materials were sold to General Air Conditioning Company, the subcontractor, on open account and without any agreement that complainant was to have a lien on the church property as indicated by the fact that all invoices appearing in the record are made out without regard to any particular job.

The proof shows that complainant is engaged in the sale of heating, air conditioning and ventilating equipment and that, about the time General Air Conditioning

Company obtained a subcontract for doing this portion of the work on the church building, one of its representatives took a set of plans to Atlanta and left them with complainant for the purpose of having a "take-off" made from the plans as to the air conditioning registers, grills and necessary equipment to complete the installation. Complainant obtained the specified sizes as well as the types and models called for by the plans and after further negotiations with the subcontractor an agreement was reached for the furnishing of these materials. Complainant, thereupon, began to fill the contract and ordered some of the equipment shipped from the manufacturers direct to the General Air Conditioning Company in Chattanooga. Mr. Laurens, the Secretary and credit manager of complainant corporation, testified that much of the materials called for by the plans and specifications was not carried in stock but had to be ordered specially for the job in question.

We think the fact that the materials were furnished on a "take-off" from the plans for the church building is sufficient to show that the materials were furnished for that particular job and, while it is true they were not shipped directly to the job but were shipped to the subcontractor's place of business, there is no proof that they were intermingled in a general stock of supplies on hand in the storeroom of the subcontractor and all of the proof shows that the materials invoiced by complainant to the subcontractor and allowed by the Chancellor were used on the job.

It appears to us that this case falls directly within the holding of the Supreme Court in Bassett v. Bertorelli, 92 Tenn. 548, 22 S. W. 423, 424, wherein it was said:

"Complainants allege and prove that they furnished the materials to Larkin for use in the construction of a certain

house for the defendant, and that he used them in the construction of that particular house. Those facts, without more, gave complainants an inchoate lien upon the property. It was not necessary to the creation of such a lien that complainants should have had an 'understanding that they intended to claim', it...Nor is it important that they charged Larkin, personally, with the debt. They were entitled to both securities,—His personal liability, and a lien on the property,—and their reliance on the one did not impair their rights to rely on the other also. They could not be put to an election between the two so long as their debt, or any part of it, remained unpaid. Nothing is shown to have been said between complainants and Larkin, either about his personal obligation to pay the debt, or the liability of the property. That, however, is of no consequence, for the lien arose, as a matter of law, from the transaction itself, (Code, §§ 1981, 1986; Acts 1881, c. 67, § 2; Acts 1889, c. 103, § 1; Green v. Williams, 92 Tenn. [220], 21 S. W. 520 [19 L. R. A. 478]) and his contract for the materials make him personally liable.

"There is a marked difference between this case and that of Mills v. Terry Mfg. Co., Tenn. 469, 19 S. W. 328. In that case the claimant was rightfully denied a lien because the materials there in question were furnished to the contractor on general account for use in any and all buildings, and not on special order, for the use in a particular building, as in this case."

The case of Mills v. Terry Mfg. Co., supra, is relied upon in defendants' brief filed in this case. However, it appears from the opinion in the Bassett case that it is to be distinguished from a case depending upon the facts here presented. In the Mills case the materials were sold to a contractor on open account with no specifications or intent as to whom they should be sold or where they would

be used. Here the record clearly shows that they were sold by the furnisher and bought by the subcontractor to be used in the church building and that they were actually used in that building to the extent of the Chancellor's decree.

■ We think where a materialman, in good faith, sells and ships to a contractor or subcontractor materials intended for use on a particular improvement, if the proof shows that the materials were actually used on the job, it is of no consequence that the materialman did not himself deliver the materials at the site of the improvement. Standard Lumber Co. v. Fields, 29 Wash. (2d) 327, 187 P. (2d) 283, 175 A. L. R. 309; 57 C. J. S., Mechanics' Liens, Sec. 42, pp. 532, 533.

■ Our statute, Code, Sec. 7913 defines "materialman" or "furnisher" as follows:

" 'Materialman' or 'furnisher' means any person who, under contract, furnishes material to the owner, contractor, or subcontractor of any degree, on the site of the improvement or for direct delivery to the site of the improvement, or who specially fabricates materials for the improvement, and who performs no labor in the installation thereof."

We think the statute contemplates that delivery of the materials may be made to the contractor or subcontractor at a place other than the site of the improvement, provided the delivery to the contractor or subcontractor is made with the intent that the materials will be later delivered to the job by the contractor or subcontractor and they are later so delivered. Where that operation has actually occurred and the materials actually have been used in the improvement, it hardly seems open to question that delivery was made to the contractor or subcontractor "for direct delivery to the site of the improvement."

Finding no error, it results that the decree is in all respects affirmed with costs and the cause remanded for enforcement of the lien and the decree generally.

Hale and Howard, JJ., concur.