235 So.2d 842

**SOUTHERN SASH OF HUNTSVILLE, INC.**

v.

**Lawson JEAN et al.**

**8 Div. 330.**

Supreme Court of Alabama.

April 2, 1970.

Rehearing Denied June 18, 1970.

706

Smith, Johnston & Walker, Huntsville, for appellant.

Ford, Caldwell, Ford & Payne and W. Stanley Rodgers, Huntsville, for appellees.

PER CURIAM.

This appeal is from a final decree of the Circuit Court of Madison County, in Equity, wherein the trial court, on March 4, 1968, denied appellant's prayer for a materialman's lien on certain property described in the original bill of complaint. There is no appeal from or assignment of error with respect to judgment for money against the alleged owner or proprietor of the premises for the purchase price of the material so furnished. The review here pertains to the refusal of the court to impress and enforce a lien on the premises— the lot and building or residence thereon.

We wish to note that the final decree here under consideration made no findings of fact whatsoever, but was a general denial of relief. Appellees contend that there was no demand in writing for a finding of fact as authorized by § 262, Title 7, Recompiled Code 1958. This section applies to civil cases at law and not to equity complaints. § 260, Title 7, Recompiled Code 1958.

We further note that the record is replete with numerous rulings on objections, which indicate that the trial court did not invoke § 372(1), Title 7, Recompiled Code 1958. This section dispenses with the necessity of making objections to evidence in the trial of an equity case and permits the court to consider only legal evidence. However, the section provides that if specific objection be made in an equity case and rulings made thereon by the trial court, the statute shall not apply to such evidence. The several rulings of the trial court on the admission or rejection of evidence, listed under assignments of error, are not here argued.

Appellant prefers to rest this appeal on Assignments of Error 7, 8 and 10, which are related. Assignment 7 is as follows:

"The trial court erred in its decree rendered on the 4th day of March, 1968, since the decree is contrary to the great weight of the evidence and the facts in the case clearly show that a materialman's lien was established on the following described property: Lot 5, Block 4,

Pine Grove Subdivision, Huntsville, Alabama."

The original bill of complaint alleges that appellant entered into a verbal agreement with respondent, Lawson Jean, whereby appellant agreed to furnish and sell said Lawson Jean building materials to be used by him in and about the construction of a dwelling house on Lot 5, Block 4, in Pine Grove Subdivision, according to the plat of said subdivision as the same appears of record in the Probate Office of Madison County; that it sold and delivered building materials to said respondent, Lawson Jean, at his request, "during the month of January 11, 1964, through January 12, 1965," for the construction of a dwelling on the above-described property, the price of which, after all credits and setoffs, was $10,369.49; that the said respondent, Lawson Jean, was to pay for the materials after the completion of the building; that the account became due on to-wit February 10, 1965, and is past due and unpaid, together with interest from February 10, 1965.

We think that by the original bill of complaint and the original and amended answers there were issues before the trial court as follows:

(1) That at the time respondent Lawson Jean entered into the contract with appellant to furnish certain building materials he was not the owner or proprietor of said real property, Lot 5, Block 4, *supra*, and that no notice was given to appellees (respondents) Taylor as the owners or proprietors of said property of the furnishing of said building materials.

(2) That said materials were actually furnished by others than appellant, but billed to appellant pursuant to an agreement with Lawson Jean to pay for the materials other than those sold specifically by complainant.

(3) That verified statement of lien was not filed within four months after the last item of material was furnished.

(4) That verified statement of lien was not filed within six months after the last item of material was furnished by complainant under the contract with Lawson Jean.

(5) That said suit was not commenced within six months after maturity of the entire indebtedness.

Inasmuch as the trial court did not predicate its decree specifically on any of the issues raised by the pleadings, we will advert in this opinion to the aforementioned issues.

We cannot agree with appellees Taylor in their contention that Lawson Jean, one of the respondents and the builder, was not the owner or proprietor of the lot in question, as those words are used in § 37, Title 33, Recompiled Code 1958.

■ We think that the evidence shows, and we are convinced therefrom, that Lawson Jean entered into an oral agreement with appellees, James K. Taylor and Joyce R. Taylor, in December, 1963, or early January, 1964, for the purchase of the lot on which the house was built and was put in possession of said lot; that this oral agreement was followed by a written agreement between the parties, dated February 20, 1964, for the sale of Lot 5, Block 4, Pine Grove Subdivision, 2nd Addition, as recorded in the Probate Record of Madison County, Alabama, at and for $3,500, of which $200 was to be paid as earnest money, balance at the closing of the loan. Possession of the lot was to be on *or before* February 20, 1964.

Mr. Jean's evidence tends to show that prior to said February 20, 1964, he had in his possession a written agreement, which the Taylors prepared, with reference to the sale of said lot and the payment of the earnest money. This instrument was not produced at the trial, but appears to have been misplaced or lost. It was never signed. However, we think the negotiations for sale of the lot were under consideration in December, 1963, and that Mr. Jean was put in

possession and that preparations for the erection of the dwelling house on the lot were begun the latter part of December, 1963. Mr. Taylor testified on cross-examination that the dwelling house on Lot 5, Block 4, was started by Mr. Ricketts (Mr. Jean's foreman) in December, 1963. Mr. Taylor also testified that Mr. Jean paid $200 on Lot 5, Block 4, Pine Grove Subdivision, 2nd Addition, but that said sum was not paid, according to his best recollection, until February, 1964. Certainly, it would be a strange anomaly for Mr. Taylor to stand quietly by and permit construction of a residence to begin on his lot concerning which there was no agreement to sell and no delivery of possession.

We think that the transaction between Mr. Jean and Mr. Taylor, whereby the latter sold the lot in question to the former and delivered possession, made Mr. Jean the owner and proprietor within the purview and meaning of § 37, Title 33, Recompiled Code 1958. This section reads in part as follows:

> "Every * * * person, firm, or corporation who shall * * * furnish any material * * * for any building or improvement on land, * * * under or by virtue of any contract with the owner or proprietor thereof, * * * shall have a lien therefor on such building or improvements and on the land on which the same is situated, * * *."

We observed with approval in Creson v. Main, 260 Ala. 318, 70 So.2d 417, our pronouncement in Staley v. Woodruff, 257 Ala. 571, 60 So.2d 384, 386. We quoted in the *Creson case*, at 60 So.2d, p. 419, an excerpt from the *Staley case* as follows:

> "The principal insistence for error advanced by appellant is that he, and not Cox, was the 'owner or proprietor' of the property within the contemplation of the lien statute, Code 1940, Title 33, § 37, and that for the liens to arise the complainants, claimants must have given him notice of furnishing of labor and materials going into the construction of the

house. This insistence cannot be sustained. The statute creates a lien in favor of those furnishing labor or materials for any building or improvement on land, 'under or by virtue of any contract with the owner or proprietor thereof.' Code, Title 33, § 37. Section 63, Title 33, provides that 'Every person, including married women and cestuis que trust, for whose use, benefit, or enjoyment any building or improvements shall be made, is embraced within the words "owner or proprietor," as used in this article.' Construing the two statutes together, it is clear, as we have often held, that a vendee in an executory contract of purchase who has paid part of the purchase price and has been put into possession of land, and who has contracted for the construction or improvement of a building upon the land, within the terms or contemplation of his contract of purchase, is an 'owner or proprietor' within the purview of § 37, Title 33 of the Code. (Citing cases)

> "It follows that since Cox was a person embraced within the words 'owner or proprietor,' as used in the statute, he was the person upon whom any notice required by statute was due to be served. There was no requirement for service of notice upon Cox's grantor, Staley, as a condition to the *fastening of a lien upon whatever interest Cox had in the property*." (Emphasis supplied)

■ In the instant case, Mr. Jean was the owner or proprietor and there was no occasion for appellant to furnish notice to the grantors of the lot that it was furnishing materials to the proprietor or owner of the lot, who was building his own house thereon. No such requirement is present in Title 33, § 37, *supra*.

■ We think and so hold that appellant had six months after the last item of material was furnished to file its statement of lien in response to § 42, Title 33, Recompiled Code 1958; also it has six

months after the maturity of the entire indebtedness secured by the lien to file suit for the enforcement of the lien. § 42, Title 33, *supra.*

Appellant was an original contractor within the purview of said § 42, Title 33, *supra,* allowing six months for filing the verified statement of lien and for filing an enforcement suit of the lien. This statement is supported by our pronounce-ment in Morris et ux. v. Bessemer Lumber Company, 217 Ala. 441, 443, 116 So. 528, 529, wherefrom we quote:

"A materialman furnishing materials for a building under contract with the owner is an original contractor, and the verified statement filed under Code, § 8836 [§ 42, Title 33, Recompiled Code 1958] within six months after the in-debtedness accrues, is within time. Redd Bros. v. Todd, 209 Ala. 56, 95 So. 276; Gilbert v. Talladega Hdw. Co., 195 Ala. 474, 70 So. 660."

Appellees Taylor contend that neither the statement of lien nor the suit to en-force the alleged lien was filed within the six months allowed by § 42, Title 33, *supra.* We cannot agree with this con-tention.

Attached to the original bill of com-plaint is a copy of the statement of lien describing the property as "Lot 5, Block 4, in Pine Grove Subdivision, Madison Coun-ty, Alabama." The original bill of com-plaint describes the property as "Lot 5 in Block 4, in Pine Grove Subdivision, according to the plat of said subdivision as the same appears of record in the Probate office of Madison County, Ala-bama."

The statement attached as an exhibit to the bill does not show that it was ever filed. However, by stipulation of the parties, it appears that the statement was duly filed for record in the Probate Office of Madison County on March 25, 1965. The original bill shows that it was filed on April 22, 1965.

Was the statement of lien filed in time? There are many exhibits in the record identified and by evidence shown to be invoices for materials sold and delivered by appellant to Mr. Jean for use in the building constructed on the lot in question. Most of these invoices were admitted in evidence, while a few were refused. The date of the first invoice is January 11, 1964. The last invoice is January 12, 1965. Three invoices were dated in De-cember, 1964; two in November, 1964; two in October; three in September; eight in August; twenty-six in July; twenty-one in June; eleven in May; one in February; and three in January, 1964.

It appears from the evidence that there was a continuing construction of the dwell-ing house on the lot, with the heaviest invoicing of materials taking place in May, June and July, 1964. The construction was under the supervision of a foreman, Mr. C. J. Ricketts.

We think that the testimony shows that most of the invoiced materials were used in the construction of the dwelling on the lot in question. One or two invoices not admitted in evidence were for tools or equipment used in the construction. A few items of the invoiced material were used in the construction of another build-ing across the street.

We observed in Howell et al. v. Hallett Manufacturing Company, Inc., 278 Ala. 316, 319, 178 So.2d 94, 95:

"The rule in most jurisdictions seems to be that proof of delivery of materials to the building site constitutes prima facie evidence or creates a presump-tion, of their use in the improvement, particularly where supported by other circumstantial evidence of actual use, and thereafter the owner has the burden of showing that they were not used, if such was the case. Annotation 39 A.L.R.2d 427, B. § 9(a), citing cases from other jurisdictions."

In the instant case decree pro confesso was rendered against the owner,

Lawson Jean. But the grantors, the Taylors, here contend that some of the materials were not used in the building. Our pronouncement in Howell et al. v. Hallett Manufacturing Company, Inc., *supra,* we think has application here. These grantors must go forward with evidence and show that the materials were not actually used in the building, if such was the case. We refer to the materials that appellant delivered or caused to be delivered to the construction site and supported by circumstantial evidence of actual use.

■ Pertinent to the issues here presented is our observation in the Howell case, *supra,* as·follows:

"It is common knowledge that on any sizeable construction job every brick, every piece of lumber, every inch of pipe, etc. is not used. But neither this court nor any other court is going to be so technical as to require an audit of every piece of material sent out on a job by a materialman before establishing a lien on property."

■ It appears from the evidence that Mr. Jean, the owner or proprietor, had a contractual arrangement with appellant to furnish the materials for the building on his account or credit. There is no proof that any credit arrangement was made with any other materialman for such materials. The invoices in evidence and the testimony support the purchase by Mr. Jean and the sale to him by appellant of the materials for the construction of the dwelling. Some of these materials may have been sold by sample and processed or manufactured by another to fill the orders of Mr. Jean. If these purchases were made by Mr. Jean, or by another with his actual or implied approval, and appellant sold the material to Mr. Jean, it is immaterial where or by whom the materials were processed or manufactured, or whether the manufacturer or appellant made the deliveries; such materials, if used in the building, should be considered as a part of the lien. To illustrate: If ap-

pellant sold the brick used in the building to Mr. Jean by sample, and delivery subsequently made to the construction site by appellant or another, it would be immaterial that the bricks were manufactured by another who made delivery. The sale and the delivery would be part of the transaction between Mr. Jean and appellant whereby the former agreed to buy and the latter agreed to sell the materials for use in the building. Such evidence should be considered by the trial court in fixing the amount of appellant's lien.

■ Appellees here contend, as they did in the nisi prius court, that there is a variance between the allegations in the original bill and the proof as to the description of the building site. The statement of lien, copy of which is attached to and made a part of the original bill of complaint, describes the site as Lot 5, Block 4, Pine Grove Subdivision, Madison County, Alabama, while Paragraph (3) of the complaint describes the site as, to wit, Lot 5 in Block 4 in Pine Grove Subdivision, according to the plat of said subdivision as the same appears of record in the Probate office of Madison County, Alabama.

It was stipulated between appellant and appellees that Plat Book 1, page 330, shows that there is a Pine Grove Subdivision, First Addition; that it does not say Lot 5, Block 4; further that Plat Book 2, page 23, shows Pine Grove Subdivision, Second Addition, and that plat does show Lot 5, Block 4, in Madison County, Alabama.

We think that the descriptions of the lot in the complaint and in the statement of lien are sufficient and there is no material variance as appellee contends. By applying the description in the complaint and in the statement of lien, there being no Lot 5, Block 4, in the Pine Grove Subdivision except in the Second Addition, the lot can be identified. Stoughton v. Cole Supply Company, Inc., 273 Ala. 383, 141 So.2d 173; § 41, Title 33, Recompiled

Code 1958, which provides that the statement shall contain " * * * a description of the property on which the lien is claimed in such manner that the same may be located or identified, * * *." We are unwilling to declare a variance as appellees contend.

We are not in accord with appellees in their contention that the statement of the lien was not filed in time to meet the mandate of § 42, Title 33, Recompiled Code 1958, wherein it provides that such statement must be filed by every original contractor within six months after the last item of material has been furnished for any building or improvement on land.

Also we cannot agree with appellees' contention that this suit to enforce the lien was not filed within six months of the maturity of the entire indebtedness secured by such lien. See § 42, *supra,* fixing the time limit for institution of enforcement suits.

It appears to us that the construction of the dwelling began in early January, 1964, or in late December, 1963, and continued until January 12, 1965, when the last material was invoiced to Mr. Jean. We have grouped the invoices, *supra.* It appears from this grouping that the heaviest part of the construction was in May, June and July, 1964, while thereafter the work slowed up as the finishing work was being done. The final touches were in the use of materials shown by the invoice dated January 12, 1965. The facts in this case relative to the concluding work are unlike those in Owens Lumber Co. v. Holmes, 277 Ala. 557, 173 So.2d 99, where it appears that some concluding items of materials were purchased and used in the house after it was sold and possession taken by the purchaser and occupancy had begun. The house at that time had been completed, and the materials were incidental and for repairs or replacements. Here, the dwelling had not been completed, had not been sold and was still in the possession of the owner, Mr. Jean.

The delay in completing the house by the use of materials purchased in the Fall of 1964, and on January 12, 1965, tolled the statute of limitations for filing the statement of lien and the institution of suit. The statement of lien was filed and suit instituted well within the time fixed by the statute.

Assignment of Error 7, supra, has merit.

The decree of March 4, 1968, from which this appeal is taken, is reversed and the cause remanded.

The above opinion was prepared by Bowen W. Simmons, Supernumerary Circuit Judge, and adopted by the Court as its opinion.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON, MERRILL, HARWOOD and MADDOX, JJ., concur.