QUEENSBORO STEEL CORPORATION v. EAST COAST MACHINE & IRON WORKS, INC. AND BRANCH BANKING AND TRUST COMPANY

No. 855SC886

(Filed 5 August 1986)

Laborers' and Materialmen's Liens § 3— personal delivery of goods by subcontractor to site not required

N.C.G.S. § 44A-18, which grants a lien to subcontractors "who furnished labor or materials at the site of the improvement," does not require that the subcontractor claiming the lien personally deliver the materials to the building site; rather, if a third tier subcontractor delivers materials to a second tier subcontractor with the intent that the materials ultimately be delivered at the site, and the materials are actually delivered at the site, the third tier subcontractor has a lien on the funds owed to the second tier subcontractor for those materials.

APPEAL by defendant Branch Banking and Trust Company from *Barefoot, Judge.* Judgment entered 18 March 1985 in Superior Court, NEW HANOVER County. Heard in the Court of Appeals 12 December 1985.

*Stevens, McGhee, Morgan, Lennon & O'Quinn, by Richard M. Morgan, for plaintiff appellee.*

*Ward and Smith, P.A., by Michael P. Flanagan and William F. Hill, for defendant appellant.*

BECTON, Judge.

In this action, Queensboro Steel Corporation (Queensboro) asserted a materialman's lien on funds owing from Cives Steel Company (Cives) to East Coast Machine & Iron Works, Inc. (East Coast) for steel supplied originally by Queensboro. Branch Banking and Trust Company (Branch Banking) sought to enforce a security interest in the accounts receivable of East Coast, which included the funds sought by Queensboro. The disputed funds were placed in escrow pending trial. The trial court denied a motion by Branch Banking for summary judgment and granted summary judgment in favor of Queensboro. Branch Banking appeals. We affirm.

I

The material facts are not in dispute. On 30 June 1981, East Coast executed a financing arrangement with Branch Banking. East Coast borrowed $1,050,000 from Branch Banking and secured the loan by assigning to Branch Banking a security interest in, among other things, all accounts receivable of East Coast. Branch Banking duly perfected its security interest.

Morrison-Knudson Company was a general contractor building a tobacco facility for R.J. Reynolds Tobacco Company in Tobaccoville, North Carolina, near Winston-Salem. The general contractor hired Cives to provide reinforced steel for the project. Cives hired East Coast to provide the steel. East Coast purchased all or nearly all the steel from Queensboro. Queensboro fabricated the steel and delivered steel plate and other steel products to East Coast at its Bridgeton, North Carolina facility in late 1983 and early 1984. East Coast modified, reinforced, sandblasted and primed the steel and then delivered it to the building site in To-

baccoville. Cives owed East Coast $154,698.35 for the modified steel, and East Coast owed $153,277.55 to Queensboro.

East Coast is now bankrupt. Branch Banking sought to partially satisfy East Coast's debt to the bank by enforcing its security interest in East Coast's account receivable from Cives. Queensboro sought priority over the funds owing from Cives to East Coast by giving proper notice and bringing this action asserting a materialman's lien on the funds as proceeds from the steel originally supplied by Queensboro for the Tobaccoville project. After several defendants were dismissed by stipulation, Branch Banking filed an answer and counterclaim. Both Queensboro and Branch Banking moved for summary judgment. After a hearing, the trial court entered summary judgment in favor of Queensboro and denied Branch Banking's motion for summary judgment. The trial court ordered that $152,337.19 be paid to Queensboro from the escrow fund.[1]

On appeal, Branch Banking contends that the trial court erred in denying its motion for summary judgment and in granting summary judgment in favor of Queensboro. We find no error and affirm the judgment below.

II

Branch Banking argues first that summary judgment was inappropriate because there was a genuine issue of material fact whether any of Queensboro's steel was ever delivered to the building site. *See* Rule 56(c), North Carolina Rules of Civil Procedure; *Bone International, Inc. v. Brooks*, 304 N.C. 371, 283 S.E. 2d 518 (1981). This argument is without merit. In March 1984, Branch Banking stipulated that Queensboro's steel products were delivered to and used in the Tobaccoville facility. Moreover, nothing presented to the trial court contradicts the evidence that Queensboro's steel was delivered to East Coast by Queensboro, delivered to the building site by East Coast, and actually used in the improvement.

The main issue before us is whether N.C. Gen. Stat. Sec. 44A-18 (1984), which grants a lien to subcontractors "who fur-

---

1. The parties stipulated that $153,277.55 was owing to Queensboro. Nonetheless, because neither party contests the amount in the order, we let it stand.

nished labor or materials at the site of the improvement," requires that the subcontractor claiming the lien personally deliver the materials to the building site. We hold that it does not.

### A

Morrison-Knudson Company was the general contractor, contracting with the owner to improve real property in Tobaccoville. Cives, East Coast and Queensboro were first, second and third tier subcontractors, respectively, contracting to improve the same real property. *See* N.C. Gen. Stat. Sec. 44A-17 (1984). Queensboro does not base its claim on subrogation. Rather, it claims a lien against funds owed to East Coast, the party with whom it dealt. General Statute Section 44A-18 provides in part:

> (3) A third tier subcontractor who furnished labor or materials at the site of the improvement shall be entitled to a lien upon funds which are owed to the second tier subcontractor with whom the third tier subcontractor dealt and which arise out of the improvement on which the third tier subcontractor worked or furnished materials.

> . . . .

> (5) The liens granted under this section shall secure amounts earned by the lien claimant as a result of his having furnished labor or materials at the site of the improvement under the contract to improve real property, whether or not such amounts are due and whether or not performance or delivery is complete.

Branch Banking argues that these subsections unambiguously require that the lien claimant personally deliver the materials at the site. We disagree.

Generally, words in a statute that have not acquired a technical meaning must be given their "natural, approved, and recognized meaning." *Black v. Littlejohn*, 312 N.C. 626, 638, 325 S.E. 2d 469, 478 (1985) (citation omitted); *see Parnell-Martin Supply Company v. High Point Motor Lodge, Inc.*, 277 N.C. 312, 319, 177 S.E. 2d 392, 396 (1970). In determining whether statutory language is ambiguous, and therefore subject to judicial determination of legislative intent, courts may consult a dictionary. *Black.* In a legal context, "furnish" means "[t]o supply, provide, or equip, for

accomplishment of a particular purpose." Black's Law Dictionary 608 (5th ed. 1979); *see* Webster's Third New International Dictionary, Unabridged 923-24 (1968) (". . . to provide or supply with what is needed, useful, or desirable. . . .").

It is not clear that the legislature, by requiring that materials be provided or supplied at the site by the lien claimant, intended to require *personal delivery* by the lien claimant. Another reasonable interpretation is that, while the lien claimant must provide the materials for the improvement of the real property with the intent that they ultimately arrive at the site, actual delivery of the materials on the premises may be made by anyone. We conclude that this statutory language is ambiguous.

The term "furnish" is used in almost every state's mechanics' lien statute. Annot., 32 A.L.R. 4th 1130, 1135 (1984). It is a "key concept," sometimes treated as equivalent to delivery of the materials to the site, and sometimes "imposing a less stringent requirement." *Id.* We must consider whether, in G.S. Sec. 44A-18, "furnished . . . at the site" simply requires a delivery of the materials to the building site, or whether it also requires *personal* delivery *by the lien claimant.*

Although some states follow the rule that provisions in mechanics' lien statutes giving rise to a lien are strictly construed while remedial provisions are liberally construed, *see generally* 53 Am. Jur. 2d *Mechanics' Liens* Secs. 23-24, at 538-43 (1970), we follow the example set in *Raleigh Paint and Wallpaper Company v. Peacock & Associates, Inc.*, 38 N.C. App. 144, 247 S.E. 2d 728 (1978), *disc. rev. denied*, 296 N.C. 415, 251 S.E. 2d 470 (1979), and proceed to determine the intention of the legislature. *See Ross Realty Company v. First Citizens Bank & Trust Company*, 296 N.C. 366, 250 S.E. 2d 271 (1979); *Parnell-Martin Supply Company*.

### B

In *Raleigh Paint*, this Court considered whether a lien claimant who contracted directly with an owner to furnish materials to improve real property must personally deliver the materials at the site of the improvement:

> There is no question but that the material was delivered by someone and that it was used in the construction. The material issue of fact asserted to exist by the defendants con-

cerns whether the materials supplied by the plaintiff were delivered to the site of the construction by plaintiff or his agent. The materiality of this fact question depends upon whether the statute requires actual delivery to the site by the lien claimant.

38 N.C. App. at 146, 247 S.E. 2d at 730.

Three of the statutes involved in *Raleigh Paint* used language identical to the language under consideration in the case at bar. The Court in *Raleigh Paint* emphasized this language.

> "Sec. 44A-8. . . . Any person who . . . furnishes materials pursuant to a contract, either express or implied, with the owner of real property for the making of an improvement thereon shall, upon complying with the provisions of this Article, have a lien on such real property to secure payment of all debts owing for . . . *material furnished* pursuant to such contract." (Emphasis added.)

> "Sec. 44A-10. . . . Liens granted by this Article shall relate to and take effect from the time of the first furnishing of labor or materials *at the site of the improvement by the person claiming the lien.*" (Emphasis added.)

> "Sec. 44A-12. . . . (b) . . . Claims of lien may be filed at any time after the maturity of the obligation secured thereby but not later than 120 days after the last furnishing of labor or materials *at the site of the improvement by the person claiming the lien.*" (Emphasis added.)

> "Sec. 44A-13. . . . (a) An action to enforce the lien created by this Article may be instituted in any county in which the lien is filed. No such action may be commenced later than 180 days after the last furnishing of labor or materials *at the site of the improvement by the person claiming the lien.*" (Emphasis added.)

38 N.C. App. at 147, 247 S.E. 2d at 731. This Court rejected the argument, raised by the defendant in *Raleigh Paint* and suggested by legal commentators, that this language "should be read as meaning 'material *delivered* at the site of the improvement by the person claiming the lien'." *Id.* (emphasis added); *see, e.g.,* Urban & Miles, *Mechanics' Liens for the Improvement of Real*

*Property: Recent Developments in Perfection, Enforcement, and Priority,* 12 Wake Forest L. Rev. 283, 293-94 (1976). This Court concluded:

> Although this interpretation could fit consistently into the statutory language, it imposes an additional burden on the lien claimant that is unwarranted, considering the language, policy, and scheme of the statute.

38 N.C. App. at 147, 247 S.E. 2d at 731.

We reaffirm the interpretation and decision in *Raleigh Paint* and apply its reasoning in the case at bar. *See generally id.* at 148-49, 247 S.E. 2d at 731-32.

Branch Banking argues that *Raleigh Paint* is distinguishable because G.S. Sec. 44A-8 (granting liens to contractors) does not contain the explicit language found in G.S. Sec. 44A-18 (granting liens to subcontractors) requiring materials to be furnished *at the site* by the lien claimant. This is a distinction without a difference. The lien granted in G.S. Sec. 44A-8 could only be enforced through G.S. Secs. 44A-10, -12, and -13, which all include the language, "at the site of the improvement by the person claiming the lien."

The language "at the site" was included to assure fair notice, actual or constructive, of materialmen's liens to interested parties by requiring visible placement of the materials at the site.[2]

> The requirement of visibly placing materials on the site of the improvement does not of necessity impose the further requirement that the lien claimant himself actually deliver the materials to the site. Such a requirement would not serve to further the requirement of notice to third parties. Consequently, other courts have properly refused to impose such a

2. Our case is not analogous to the case of a locksmith who provides locks that are incorporated into doors off the site of the improvement. It is arguable that when the doors are delivered to the site, there would be no effective notice to third parties of a lien on the locks, as opposed to a lien on the doors as whole units. Our case is like that of a wood supplier whose product is sanded and finished off the site and then delivered. We believe third parties would realize that there is a wood supplier who may claim a lien if not paid. We express no opinion on the rights of a supplier who furnishes an item that is incorporated off the site into a larger unit which is then delivered at the site.

requirement on the lien claimant. *Delivery to a place other than the site of the improvement, if made with the intent that materials will be later placed on the site, and if they are so placed, will support a lien.*

*Raleigh Paint*, 38 N.C. App. at 148-49, 247 S.E. 2d at 732 (citations omitted and emphasis added). Subcontractors often supply materials off the site to other subcontractors or to the general contractor; some of these materials may be used entirely off the site of the improvement to fabricate other materials and may never be delivered at the site. We believe that the language specifying that a *subcontractor* must furnish the materials at the site was intended to assure that only those materials provided specifically for use in the improvement of the real property would give rise to a lien.

C

Although specific statutory rules vary widely among the states, there are two general doctrines that give structure to the analysis of mechanics' and materialmen's lien statutes. *See generally* 53 Am. Jur. 2d *Mechanics' Liens* Secs. 93-95, at 603-09; Annot., 32 A.L.R. 4th 1130, 1134-35 (1984); Urban & Miles, *supra*, at 303-04. The first doctrine requires actual incorporation of the materials into the real estate improvement in order to entitle the supplier to a lien. Because actual incorporation is often difficult to prove, most states using this doctrine treat proof of delivery at the site of the improvement as *prima facie* evidence of actual incorporation or as evidence sufficient to raise a presumption of incorporation. *See, e.g., Southern Sash of Huntsville, Inc. v. Jean*, 285 Ala. 705, 235 So. 2d 842 (1970); *Bankston v. Smith*, 236 Ga. 92, 222 S.E. 2d 375 (1976); *District Heights Apartments, Inc. v. Noland Company*, 202 Md. 43, 95 A. 2d 90 (1953); Fla. Stat. Ann. Sec. 713.01(6) (1969); Tenn. Code Ann. Sec. 66-11-101(5) (1982).

Most states have adopted the second approach, sometimes in addition to the incorporation method of establishing a lien. The second approach recognizes a lien, even if there has been no actual incorporation, upon proof that (1) the claimant specially fabricated or provided the materials for use in the improvement, and (2) there was actual delivery at the site. *See, e.g., Crane Company v. Naylor*, 70 Okla. 75, 172 P. 956 (1918); *Hyak Lumber & Millwork, Inc. v. Cissell*, 40 Wash. 2d 484, 244 P. 2d 253 (1952);

Tenn. Code Ann. Sec. 66-11-101(5), (10), -102(a) (1982 & 1985 Supp.). *See generally* 53 Am. Jur. 2d *Mechanics' Liens* Sec. 95, at 607.

In the states requiring actual delivery as an element of the lien claim, whether they require proof of incorporation or not, there appears to be no requirement of personal delivery by the lien claimant of the materials at the site of the improvement. *See, e.g., Smalley v. Gearing*, 121 Mich. 190, 203, 79 N.W. 1114, 1120 (1899) (Stone delivered off the site by claimant; later delivered at site); *Bruce v. Berg*, 8 Mo. App. 204, 207 (1879); *Rogers v. Crane Company*, 180 Okla. 139, 68 P. 2d 520 (1937); *Peerless Pacific Company v. Rogers*, 81 Or. 51, 158 P. 271 (1916) (actual use required, but personal delivery by claimant not required); *Dealers Supply Company v. First Christian Church*, 38 Tenn. App. 568, 276 S.W. 2d 769, 773 (1954) (if provided for use in, and actually used in, improvement, "it is of no consequence that the materialman did not himself deliver the materials at the site of the improvement."); *Hyak Lumber*, 40 Wash. 2d at 485, 244 P. 2d at 254 ("Who, or what agency, performed the physical act of delivery is immaterial." (citation omitted) ); *Builder's Lumber Company v. Stuart*, 6 Wis. 2d 356, 94 N.W. 2d 630 (1959); Fla. Stat. Ann. Sec. 713.01(11) (1986 Supp.), (13) (1969); Ga. Code Ann. 44-14-361(a)(2) (1985 Cum. Supp.) (allows a subcontractor or materialman to deliver to another subcontractor); Ohio Rev. Code Ann. Sec. 1311.02 (1979) (allows delivery to any subcontractor); Tenn. Code Ann. Sec. 66-11-101(5), (10); *see also Southern Sash of Huntsville, Inc.*

In contrast to the state rules discussed in Annot., 32 A.L.R. 4th 1130, 1164-68, Secs. 11-13 (1984) and Annot., 39 A.L.R. 2d 394, 435-49, Secs. 11-16 (1955), North Carolina's current mechanics' and materialmen's lien statutes apparently do not require actual incorporation of materials into the improvement, even when the materials are furnished to a subcontractor. *See* Urban & Miles, *supra*, at 303-04, 354-55. *But see Fulp & Linville v. Kernersville Light and Power Company*, 157 N.C. 154, 72 S.E. 869 (1911) (interpreting an older statute that has since been repealed). In some states, proof of actual use is required when the materials are delivered to a contractor or subcontractor rather than directly to the owner. This protects the owner against liens based on materials that are never actually delivered and of which the owner has no notice. This function is served in our State, at least in part, by the requirement that the materials be delivered at the site, whether by the lien claimant or by another party.

In 1971, the legislature enacted G.S. Sec. 44A-18 and other provisions within Chapter 44A relating to the liens of subcontractors who do not deal directly with owners. *See* 1971 N.C. Sess. Laws, ch. 880, s. 1. The amendments were designed to "clarify existing law relative to the lien of subcontractors for the improvement of real estate and to provide an efficient procedure for the enforcement of the lien in accordance with modern business practice." Drafting Committee on Lien Laws, of the General Statutes Commission, Memorandum in Explanation and Support of House Bill 393 and Senate Bill 243, at 1 (1971). The legislative history of the amendments indicates that the drafters addressed several important issues. For example, they addressed whether (and to what extent) subcontractors' liens would be against funds owed to parties with whom they dealt, rather than against real property itself, and whether subcontractors more remote than the third tier should have rights of subrogation to contractors' liens against owners' land. *Id.* at 8-9. Given this background and the detailed explanation of the intended changes by the North Carolina drafting committee, the absence of any discussion of a requirement of personal delivery by a subcontractor strongly suggests that the legislature did not intend to add this unusual and burdensome requirement when it enacted G.S. Sec. 44A-18.

In *Raleigh Paint* we held there was no requirement of personal delivery under G.S. Sec. 44A-8. We now hold there is no such requirement under G.S. Sec. 44A-18. If a third tier subcontractor delivers materials to a second tier subcontractor with the intent that the materials ultimately be delivered at the site, and the materials are actually delivered at the site, the third tier subcontractor has a lien on the funds owed to the second tier subcontractor for those materials.

### III

Because personal delivery at the building site by Queensboro was not required, there were no issues of material fact before the trial court. The steel provided by Queensboro was specially fabricated with the intent that it be delivered at the building site, and it was so delivered. Queensboro established a valid lien under Chapter 44A on the funds owed to East Coast. This lien takes priority over Branch Banking's security interest in the same funds. N.C. Gen. Stat. Sec. 44A-22 (1984).

For the reasons set forth above, summary judgment in favor of plaintiff Queensboro is

Affirmed.

Judges WHICHARD and PARKER concur.