FORSYTH MEMORIAL HOSPITAL v. ARMSTRONG WORLD INDUSTRIES

[122 N.C. App. 413 (1996)]

FORSYTH MEMORIAL HOSPITAL, INC., a North Carolina Nonprofit Corporation, and
   CAROLINA MEDICORP, INC., a North Carolina Nonprofit Corporation,
   Plaintiffs v. ARMSTRONG WORLD INDUSTRIES, INC., a Pennsylvania
   Corporation, Defendant

No. COA95-349

(Filed 21 May 1996)

**Limitations, Repose and Laches § 29 (NCI4th)— defendant
flooring manufacturer—no materialman—real property
improvement statute of repose inapplicable**

   Defendant .flooring manufacturer was not a materialman
within the meaning of the real property improvement statute of
repose, N.C.G.S. § 1-50(5), and the claim of plaintiff hospital own-
ers for willful and wanton conduct in supplying floor coverings
containing asbestos used in the construction of additions to
plaintiffs' hospital was barred by the products liability statute of
repose set forth in N.C.G.S. § 1-50(6), where plaintiffs and defend-
ant had no contract express or implied; plaintiff produced no evi-
dence that defendant ever intended that its product be delivered
or that it was delivered to plaintiff's job site; defendant usually
delivered its product to a wholesale distributor who then deliv-
ered the product to retailers or flooring contractors; flooring
materials were shipped F.O.B. Lancaster, Pennsylvania so that
title to the materials passed to the wholesale distributor upon
delivery to the carrier in Pennsylvania; and defendant thus was
not a materialman furnishing materials to a job site but was
instead merely a remote manufacturer placing his goods into the
stream of commerce. N.C.G.S. § 1-50(5).

   **Am Jur 2d, Building and Construction Contracts § 114.**

   **What statute of limitations governs action by con-
tractee for defective or improper performance of work by
private building contractor. 1 ALR3d 914.**

   Appeal by plaintiff from judgment entered 18 January 1995 by
Judge Peter M. McHugh in Forsyth County Superior Court. Heard in
the Court of Appeals 26 March 1996.

   *Haywood, Denny & Miller, L.L.P., by Michael W. Patrick, for
   plaintiffs-appellants.*

   *Hutchins, Doughton & Moore, by H. Lee Davis, Jr., for
   defendant-appellee.*

JOHNSON, Judge.

Plaintiffs Forsyth Memorial Hospital, Inc. and Carolina Medicorp, Inc. are North Carolina nonprofit corporations which own and operate the hospital facilities known as Forsyth Memorial Hospital. On 30 August 1990, plaintiffs instituted this action against defendant Armstrong World Industries, Inc., a Pennsylvania corporation, alleging that defendant manufactured, sold and furnished asbestos-containing vinyl flooring which was installed in Forsyth Memorial Hospital, and that the asbestos-containing flooring material constituted a hazard. The complaint further alleged that at the time of installation, defendant had knowledge that asbestos in resilient flooring was hazardous and was not readily identifiable. On 30 October 1990, defendant filed an answer and motion to dismiss for failure to state a claim upon which relief may be granted. Subsequently, defendant's motion to dismiss was granted by the trial court and plaintiffs appealed.

The North Carolina Court of Appeals upheld the trial court's decision, based upon the statute of repose contained in North Carolina General Statutes section 1-52(16) (1983). *Forsyth Memorial Hospital v. Armstrong World Industries*, 107 N.C. App. 110, 418 S.E.2d 529 (1992) (hereinafter *"Forsyth I"*). The North Carolina Supreme Court, however, granted discretionary review; and on 17 June 1994, entered its opinion affirming in part, and reversing and remanding in part a portion of the Court of Appeals' decision. *Forsyth I*, 336 N.C. 438, 444 S.E.2d 423 (1994). The Supreme Court held that since the complaint alleged that defendant was guilty of willful and wanton conduct in furnishing asbestos-containing flooring to the hospital, North Carolina's real property statute of repose, North Carolina General Statutes section 1-50(5) (1983), and not our product liability statute of repose, North Carolina General Statutes section 1-50(6) (1983), would govern plaintiffs' claims if it could be shown that defendant acted as a materialman on plaintiffs' building projects. The Court further held that if defendant was a materialman and had acted willfully and wantonly, there was no statute of repose which would bar plaintiffs' claims. *Forsyth I*, 336 N.C. at 446, 444 S.E.2d at 428.

Recognizing that this case might be resolved on a motion for summary judgment solely addressing the matter of the applicable statute of repose, Judge Judson O. DeRamus, Jr., on 18 September 1994, entered an order scheduling an initial period of limited discovery on that issue alone.

During discovery, the following evidence was disclosed. Defendant was aware of and began warning installers of resilient flooring that existing resilient floors might present hazards because it contained asbestos, and that the asbestos was not readily identifiable, since 1974. However, despite its knowledge of these hazards, defendant did not remove asbestos from its flooring and continued to sell resilient flooring products containing asbestos until 1983. Defendant's asbestos-containing flooring was sold to and installed in Forsyth Memorial Hospital long after defendant knew of the hazards associated with the flooring. Plaintiff hospital discovered asbestos-containing flooring materials in two areas of the hospital in the winter of 1989-90, about six months before instituting this action.

The first area, in which the asbestos-containing products were discovered, was a large addition to the hospital, finished in 1977. Callender Flooring Company of Greensboro, North Carolina installed these flooring materials while working for Nello Teer Company, a general contractor on the 1977 addition. Notably, plaintiffs had initially identified Colonial Flooring and Acoustical Company of Durham, North Carolina as the installer of the flooring materials. The second area containing the hazardous materials was a 1981 addition that houses the hospital's emergency room. These materials were installed by Shields, Inc. of Winston-Salem, North Carolina, a subcontractor working for McDevitt & Street, the general contractor for the 1981 addition.

Mr. William H. Freeman, Jr., one of defendant's home office managers, was deposed by both parties on several occasions. Mr. Freeman testified that defendant protected their wholesale distribution system and sold only to their wholesale distributors, with the exception of certain national accounts (e.g., Sears, J.C. Penney, or Color Tile). Moreover, he testified that defendant would never sell directly to the owner of a construction site or to the owner of a building under construction; that defendant would never sell directly to a general contractor on a construction site; and that defendant would never sell directly to a subcontractor or installer, such as Colonial Flooring.

Mr. Tom B. Turpin, district flooring manager for defendant's Charlotte district sales office from 1974 to 1989, was also deposed. Mr. Turpin's testimony noted, as did Mr. Freeman, that defendant used a wholesale distributor network for flooring products. The North Carolina wholesale distributors were J.J. Haines of Goldsboro,

Peerless, Inc. of Greensboro, and Sullivan Hardware of Asheville, North Carolina. Colonial Flooring, Callender, and Shields, Inc. were not wholesale distributors of defendant's products, but were retailers or flooring contractors. If a flooring contractor or retailer wanted defendant's product, they would call the wholesale distributor and the materials would be shipped from the wholesale distributor's warehouse. In a few cases, the materials may be shipped directly from Lancaster, Pennsylvania by common carrier to a destination chosen by the wholesale distributor. However, in such an instance, the product would be shipped "F.O.B. Lancaster, Pennsylvania" to the destination selected by the wholesale distributor, whether that destination was the wholesale distributor's warehouse, the wholesale distributor's customer (retailer/installer) or the site of installation. The wholesale distributor selected the common carrier to be used for such transportation, and title to the product passed to the wholesale distributor when the product was loaded onto said common carrier.

Neither Mr. Freeman, nor Mr. Turpin could attest to personal knowledge of any sales of flooring products used in the two hospital renovations. However, plaintiff was subsequently able to establish through several other affidavits that Callender Flooring Company of Greensboro had installed Armstrong material in the 1977 addition to the hospital.

Porter Anderson, Callender's job superintendent, indicated that the flooring materials used in the 1977 addition *most likely* were shipped directly to the hospital construction site from the mill, since Callender did not have warehouse facilities to store products prior to installation. Further, Mr. Anderson identified the flooring as resembling defendant's product, and stated that Callender ordered defendant's products through Peerless, Inc. In reference to the 1981 addition, defendant filed a supplemental affidavit from Lloyd Whitley, flooring manager for Shields, Inc., in which he indicated that defendant's material used on the 1981 emergency room would have been shipped to Shields' warehouse facilities. Mr. Whitley did not, however, indicate whether the material could have been shipped from defendant or from a distributor. Defendant did not have company sales or shipping records that could prove or refute that its products were furnished or shipped directly to plaintiff hospital's facility.

On 24 October 1994, defendant made a motion for summary judgment and that motion came on for hearing on 9 January 1995 before Judge Peter M. McHugh in Forsyth County Superior Court. After

reviewing all of the evidence before the court, on 18 January 1995, Judge McHugh entered judgment granting defendant's motion for summary judgment. Again, plaintiffs appeal.

On appeal, plaintiffs bring forth two assignments of error, both of which question the propriety of the trial court's grant of summary judgment. Thus, our inquiry on appeal is essentially whether there is any issue of material fact as to whether defendant is a materialman.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." N.C.R. Civ. P. 56. It is the moving party's burden to establish the lack of a triable issue of fact. *Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 313 N.C. 488, 329 S.E.2d 350 (1985). The moving party meets this burden if it can show that an essential element of the nonmoving party's claim does not exist, or the nonmoving party cannot produce evidence of an essential element of his claim, or cannot overcome an affirmative defense which would bar the claim. *Collingwood v. G.E. Real Estate Equities*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989). Once the moving party has met its burden, the nonmoving party must "produce a forecast of evidence demonstrating that the [nonmoving party] will be able to make out at least a prima facie case at trial." *Id.* at 66, 376 S.E.2d at 427.

The Court of Appeals and the Supreme Court previously decided that the statute of repose governing this action is found in North Carolina General Statutes section 1-50(5), the statute of repose governing claims of defective improvements to real property. Section 1-50(5) provides the following:

a. No action to recover damages based upon or arising out of the defective or unsafe condition of an improvement to real property shall be brought more than six years from the later of the specific last act or omission of the defendant giving rise to the cause of action or substantial completion of the improvement.

b. For purposes of this subdivision, an action based upon or arising out of the defective or unsafe condition of an improvement to real property includes:

. . .

> 9. *Actions against any person furnishing materials,* or against any person who develops real property or who performs or furnishes the design, plans, specifications, surveying, supervision, testing or observation of construction, or construction of an improvement to real property, or a repair to an improvement to real property.

N.C. Gen. Stat. § 1-50(5)(a),(b) (1983) (emphasis added). In its discretionary review of the Court of Appeals' decision in *Forsyth I*, the Supreme Court concluded,

> that the phrase, "any person furnishing materials," refers to a materialman who furnished materials to the jobsite either directly to the owner of the premises or to a contractor or subcontractor on the job.

336 N.C. at 443, 444 S.E.2d at 426. The Court went on to explain that if one is simply "a remote manufacturer, whose materials found their way to plaintiffs' jobsite indirectly through the commerce stream, then defendant would not be a materialman and would not have furnished materials on the jobsite within the meaning of [subsection (5)(b)(9),]" and the products liability six-year statute of repose would apply, rather than the real property improvement statute of repose, even if the products became fixtures. *Id.* at 445, 444 S.E.2d at 427.

North Carolina's materialman's lien statute, North Carolina General Statutes section 44A-8, provides further guidance as to who may be a materialman. Section 44A-8 provides,

> Any person who performs or furnishes labor or professional design or surveying services or furnishes materials pursuant to a contract, either express or implied, with the owner of real property for the making of an improvement thereon shall, upon complying with the provisions of this Article, have a lien on such real property to secure payment of all debts owing for labor done or professional design or surveying services or material furnished pursuant to such contract.

N.C. Gen. Stat. § 44A-8 (1989). This Court, in *Wallpaper Co. v. Peacock & Assoc.*, 38 N.C. App. 144, 247 S.E.2d 728 (1978), *disc. review denied*, 296 N.C. 415, 251 S.E.2d 470 (1979), and *Queensboro Steel Corp. v. East Coast Machine & Iron Works*, 82 N.C. App. 182, 346 S.E.2d 248, *disc. review denied*, 318 N.C. 508, 349 S.E.2d 865 (1986), provides additional instruction on who might be a materialman in North Carolina.

In *Wallpaper Co.*, the plaintiff, who had been authorized by defendant-owner to accept orders for carpet and wallpaper from a third-party, sought to enforce a materialman's lien against the defendant-owner pursuant to section 44A-8 of the General Statutes. 38 N.C. App. at 144-45, 247 S.E.2d at 729-30. Though the materials ordered were not delivered to the site by the plaintiff, the materials were nonetheless delivered. *Id.* at 145, 247 S.E.2d at 730. This Court held that, by statute (section 44A-8), a lien claimant is not required to personally deliver the materials to the site of the improvement, "so long as the materialman furnished the goods with the intent that they would later be placed on the site and they were so placed." *Id.* at 149, 247 S.E.2d at 732. Thus, plaintiff was able to maintain a claim of lien as a materialman, even though he did not personally deliver the materials to the jobsite, because he intended that they would be delivered and they were so delivered to the site. *Wallpaper Co.*, 38 N.C. App. 144, 247 S.E.2d 728.

Further, in *Queensboro Steel*, the plaintiff was a third tier subcontractor who attempted to assert a materialman's lien over funds owed by the first tier subcontractor to the second tier subcontractor. 82 N.C. App. at 183, 346 S.E.2d at 249. The subcontractors had contracted with one another to improve the same real property. *Id.* at 185, 346 S.E.2d at 250. Branch Banking and Trust Company (BB&T), a co-defendant, sought to satisfy a portion of the second tier subcontractor's debt to the bank by enforcing its security interest in the second tier subcontractor's account receivable from the first tier contractor. *Id.* at 184, 346 S.E.2d at 249. BB&T argued that the plaintiff did not qualify for a materialman's lien under North Carolina General Statutes section 44A-18 because it did not personally deliver its materials to the site. *Id.* at 184, 346 S.E.2d at 250. This Court held that there was no requirement of personal delivery under section 44A-18 to qualify for a materialman's lien by a third tier subcontractor, so long as the third tier subcontractor delivered the materials to the second tier subcontractor with the intent that the materials ultimately be delivered to the site and the materials are actually delivered to the site. *Id.* at 191, 346 S.E.2d at 254.

In the instant case, plaintiffs were owners and operators of the improved real property, Forsyth Memorial Hospital; McDevitt & Street and Nello Teer Company were general contractors, who employed retail installers, Colonial Flooring, Shields, Inc. and Callender Flooring Company; Peerless, Inc. and J.J. Haines were defendant's wholesale distributors; and defendant was a manufac-

turer of the alleged asbestos-containing flooring. Unlike the parties in *Wallpaper Co.* and *Queensboro Steel*, plaintiffs and defendant in the instant case had no contract, express or implied. In fact, defendant's only intent was that of a manufacturer—to place its product into the stream of commerce. Plaintiff produced no evidence that defendant ever intended that its product, particularly, be delivered to the Forsyth Memorial Hospital jobsite. Quite the contrary, plaintiff's evidence tends to show that defendant usually delivered its product to a wholesale distributor, who then delivered the product to retailers or flooring contractors. In rare instances, however, flooring contractors or retailers would call the wholesale distributor, and because the distributor did not have the materials in stock, the distributor would order the needed materials from defendant and the materials would be shipped directly from defendant's factory in Lancaster, Pennsylvania. But even in those instances, the materials were shipped F.O.B. Lancaster, Pennsylvania. Thus, title to the materials passed to the wholesale distributor, as buyer, when the product was loaded onto the truck in Lancaster, Pennsylvania. *Peed v. Burleson's Inc.*, 244 N.C. 437, 439-40, 94 S.E.2d 351, 353 (1956). More specifically, title passes upon delivery to the carrier, who is the wholesale distributor's agent. *Id.* at 440, 94 S.E.2d at 353. Accordingly, it necessarily follows that under these circumstances, the wholesale distributor, as buyer, through his agent, would have actually delivered the materials to Forsyth Memorial Hospital, the subcontractors or contractors—not defendant, as seller.

In fact, it would seem that in the event of non-payment for its product, defendant would not have a claim of lien against plaintiffs. Since title has already passed to the wholesale distributor at the point of loading in Lancaster, Pennsylvania, defendant could not readily maintain a claim of lien against plaintiffs for the wholesale distributor's non-payment. In this instance, defendant is no longer a materialman, furnishing materials to a jobsite; he is merely a remote manufacturer, placing his goods into the stream of commerce.

After defendant came forth with its forecast of evidence in support of its contention that it was not a materialman, plaintiffs then bore the burden of producing its own forecast of evidence showing that they would be able to make out at least a prima facie case at trial. *Collingwood*, 324 N.C. at 66, 376 S.E.2d at 427. Plaintiff presented evidence of what might or may have occurred, but never produced definitive evidence that defendant had ever furnished materials directly to Forsyth Memorial Hospital or to a contractor or subcontractor on the

job; that defendant had such intent to do so; or that there was ever any express or implied contract between the parties to furnish such materials. Thus, there is no competent evidence that defendant was a materialman within the meaning of North Carolina's statutory scheme or case law. While plaintiffs argue to the contrary, their evidence is based upon mere speculation.

"A genuine issue is one which can be maintained by substantial evidence." *Wilder v. Hobson*, 101 N.C. App. 199, 202, 398 S.E.2d 625, 628 (1990). Defendant produced substantial evidence to show that there was no genuine issue of material fact and that it was entitled to judgment as a matter of law. Plaintiffs, however, failed to come forth with their own forecast of evidence to show the contrary. Thus, the trial court properly granted defendant's motion for summary judgment.

In light of the foregoing, the trial court's decision is affirmed.

Affirmed.

Judges WYNN and WALKER concur.