G. S. LAMBERT & PAULINE LAMBERT v.
SAM NEWMAN D/B/A SAM NEWMAN DOZER SERVICE

4563                                    431 S.W. 2d 480

Opinion Delivered September 16, 1968

*Murphy* & *Burch* for appellants.

*Crouch, Blair* & *Cypert* for appellee.

CARLETON HARRIS, Chief Justice. This case relates to the mechanics and materialmen's liens statutes, Ark. Stat. Ann. § 51-601 et seq. (1947). G. S. and Pauline Lambert are the owners of 366 acres of land adjacent to Beaver Reservoir in Benton County. A 10-acre tract near the center of their acreage had previously been deeded to an Arkansas corporation, Bevark Investment Company, Inc. The Lamberts entered into a contract with Bevark, William E. Davidson, and Jim L. Moore for the development of the 10-acre tract (heretofore referred to) and a portion of the Lambert land a part of which had already been sub-divided into residential lots. Under the contract, Moore was obligated to develop and sell all real estate described in the contract, and that instrument also provided that the Lamberts were to share in the net profits resulting from the development and sale of the lands. Bevark, of which Mr. Lambert was president at the time of the signing of the contract, was also to receive a share of the net profits resulting from the development and sale. Moore employed appellee, Sam Newman, to do certain bulldozer work on the land pursuant to the terms of the contract, and Newman worked for a period of about four weeks. According to appellee's records, 452 hours of bulldozing had been done, this at a charge of $12.50 per hour, and appellee contended that he was due $5,650.00 for this work. Moore paid $1,000.00 on this bill, but made no further pay-

ments, and Newman ceased work on the property. Thereafter, appellee instituted suit against Moore, Davidson, Bevark, and the Lamberts, seeking a monetary judgment for the amount allegedly due against the first two, and seeking a first lien against the lands of the Lamberts and Bevark, as security for the judgment. Moore and Davidson did not appear and a default judgment was entered against them. The Lamberts and Bevark filed a demurrer which was overruled by the court[1]. Thereafter, these defendants filed an answer denying the allegations of the complaint. The case proceeded to trial, and at the conclusion of appellee's evidence, the Lamberts demurred to the evidence. This was overruled, and after appellants' witnesses had been heard, the court held that Newman was entitled to a materialman's lien on "said property owned by the said defendants, G. S. Lambert and Pauline B. Lambert and Bevark Investment Company." Interest from August 15, 1966, at the rate of 6% was allowed, and the court directed that, if the judgment be not paid within 20 days, the lien should be foreclosed, and the property sold. From the decree so entered, the Lamberts alone bring this appeal.

Though several points are urged for reversal, actually, all are merged into the simple question, "Is Newman entitled to a lien, under Section 51-601, for the work he performed in cleaning up the premises?"

The pertinent portion of the statute reads as follows:

"Every mechanic, builder, artisan, workman, laborer or other person who shall do or perform any work upon, or furnish any material, fixtures,

---

[1]As to Paragraph 11 of the complaint, the court treated the demurrer as a motion to make more definite and certain, and required appellee to plead definitely as to the precise nature of the relationship existing between and among the defendants relative to their proprietary interest in the lands sought to be subjected to the lien.

engine, boiler or machinery for any building, erection, improvement upon land, or upon any boat or vessel of any kind, or for repairing same, under or by virture of any contract with the owner or proprietor thereof, or his agent, trustee, contractor or subcontractor, upon complying with the provisions of this act [§§ 51-601, 51-604—51-626], shall have for his work or labor done, or materials, fixtures, engine, boiler or machinery furnished a lien upon such building, erection or improvement, and upon the land belonging to such owner or proprietor on which the same are situated, to the extent of one acre;[2].***,,

Newman, in testifying, stated that his work consisted of clearing timber and underbrush at various places on the property. From the record:

"Q. I want you to describe to the Court, Mr. Newman, the exact nature of the clearing that was done by your dozers, how the land looked, give a description of how the land was before, generally, and how it was after, generally?

A. Well, there had been roads cut through the property but none of the land had been cleaned up for sub-leasing. We went in and removed all the brush and underbrush and small trees and rotten trees out and just left the big trees for development.

Q. What was the effect of your work in that area?

A. Well, it's an improvement to the land, I mean, it looks to me like it is an improvement, at any time when you take out the brush and underbrush, you are improving land."

We think the Chancellor erred in holding that appellee was entitled to a statutory lien. This exact sit-

---

[2]The balance of the paragraph deals with buildings, erections, and improvements made upon any lot of land in a town or city.

nation has not previously been presented to the court, but we think the language of the statute and our cases are contrary to appellee's view.

It is noted that a laborer or materialism is given a lien for work done or material furnished "for any building, erection, improvement *upon* land, \*\*\*." In *Dix* v. *Olds,* 242 Ark. 850, 415 S.W. 2d 567, we specifically pointed out that there is a difference in the meaning of the word "upon" and the word "to." The court stated:

> "We conclude that if the legislature had intended to create a statutory lien on *all land* that may be improved by labor and materials, it would have separated the improvement from the land subject to lien, and would have said 'improvement *to* land' instead of 'improvement upon land,' and would have extended the lien to the land so improved rather than confine it to the land 'upon which the same are situated.' "

We reiterate this distinction in case the General Assembly desires to make a change.

It is also pointed out in *Dix* that the materialman's lien law is in derogation of the common law, and must be strictly construed[3].

In *Leiper* v. *Minnig,* 74 Ark. 510, 86 S.W. 407, we held that a contractor was entitled to a lien on property upon which he, under authorization, placed a sidewalk. This was contrary to earlier decisions which, under the statute at that time, had held that "improvement" meant a building or erection of some nature. *Guise* v. *Oliver,* 51 Ark. 356. In 1895, the Legislature amended the law, and Justice Wood, writing the opinion in *Leiper,* mentioned this fact, and the court held that the new act was broad enough to include sidewalks. The pertinent

---

[3]Once it is determined that the property is subject to a lien, the procedure for perfecting same is liberally construed.

language, "for any building, erection, improvement upon land," in the 1895 act, relied on by the court, is still a part of the present law. There is no Arkansas case which holds that the mere clearing of land entitles one to a lien.

Cases from other states are generally of no aid, because of the difference in the wording of the statutes; courts which have a similar statute, using the word "upon," have differed in their interpretation. The Missouri case of *Vasquez* v. *Village Center, Inc.*, 362 S.W. 2d 588, is relied upon by appellee. There, the Supreme Court upheld a jury verdict which found that the work performed by the plaintiff was lienable within the meaning of the statute which provided a lien for those who performed "any work or labor upon ***." However, it might be mentioned that the factual background is somewhat different from that involved in the present litigation. There, the court, reciting the facts, stated:

> "It appears to us that there was substantial evidence from which a jury reasonably could have found that the work performed by plaintiff was lienable within the meaning of the language of Section 429.010, construed, as it should be, as favorably to plaintiff as its terms will permit. That is because there was evidence justifying a finding that the work plaintiff did was performed as an integral part of a total plan to proceed without delay to erect a group of buildings as a shopping center on the land in question. The evidence that the course of the creek which meandered through the property was changed; the evidence as to the leveling and filling, the construction of parking areas adjacent to designated building sites, the providing of means of ingress and egress for the proposed shopping center and the parking areas to and from Manchester Road, the preparing of sub-grades for buildings on which concrete slabs were to be poured as the next step in the construction process—all amounted to evidence of essential work in the accomplishment

of the specific plan and intention to build a shopping center including buildings.''

This is a ''far cry'' from clearing brush and rotten trees from land, which, under plans for the future, will be sold as lots—and, if sold, residences constructed thereon.

The Supreme Court of Utah, in *Backus* v. *Hooten,* 294 P. 2d 703, reached a contrary conclusion in construing the word ''upon.'' There, a lien was claimed for leveling land, and the court said:

> ''Let it be conceded that leveling land enhances its value and improves its utility. It does not follow that such leveling constitutes an improvement *upon* land. It would seem to be an unreasonable construction to hold that a contract for plowing, seeding, or manuring of land is a contract for the construction of an improvement upon land.

> ''Nor do we feel that it is necessary to call upon any rules of statutory interpretation since the language seems not to require interpretation. However, under a familiar rule of construction the expression 'or improvement upon land' can only refer to improvements of a character similar to those immediately before mentioned.''

See also the Iowa case of *Brown* v. *Wyman,* 9 N.W. 344, cited in the Utah case.

It follows, from what has been said, that appellee was not entitled to the lien, and the court erred in granting same.

Reversed.