CONTRACT STEEL SALES, INC. v. FREEDOM CONSTRUCTION COMPANY
AND E. I. DU PONT DE NEMOURS AND COMPANY

No. 154PA87

(Filed 2 December 1987)

**1. Laborers' and Materialmen's Liens § 3— furnishing of materials defined**

Materials are furnished within the meaning of N.C.G.S. § 44A-18(1) when, pursuant to a subcontract, materials are delivered to the site of improvement, and it is not required that the materials be incorporated into the improvement or that the materials be present on the site at the time notice of lien is given.

**2. Laborers' and Materialmen's Liens § 4— notice of claim of lien—use of statutory form not required**

A materialman's lien claimant is not required to use the model "Notice of Claim of Lien" form set out in N.C.G.S. § 44A-19(b) in order to perfect its lien but may deviate from the statutory form so long as all of the information set out in the statutory form is contained in the notice.

**3. Laborers' and Materialmen's Liens § 4— notice of claim of lien—sufficiency of letter to owner**

Plaintiff first tier subcontractor complied with the requirements of N.C.G.S. § 44A-19 for giving notice of a claim of lien for materials by writing to the owner a letter which specifically stated that it was a notice of claim of lien and contained all the information set out in the statutory form, including the names and addresses of the parties to the subcontract, a description of the work encompassed by the subcontract, the amount claimed and a description of the project.

Justice MEYER dissenting.

Justice MITCHELL joins in this dissenting opinion.

APPEAL by defendant pursuant to N.C.G.S. § 7A-31 from a Court of Appeals decision, 84 N.C. App. 460, 353 S.E. 2d 418 (1987), reversing a judgment entered by *John, J.*, sitting without a jury at the 4 April 1986 Session of Superior Court in GUILFORD County, concluding that plaintiff is not entitled to a lien on funds under N.C.G.S. § 44A-18. Heard in the Supreme Court 13 October 1987.

*Foster, Conner, Robson & Gumbiner, P.A., by Eric C. Rowe and Allen Holt Gwyn, for plaintiff appellee.*

*Smith, Helms, Mulliss & Moore, by Robert A. Wicker and Catherine C. Eagles, for defendant appellant.*

*Fenton T. Erwin, Jr. and L. Holmes Eleazer, Jr. for amici curiae, American Subcontractors Association of the Carolinas, Inc.; Steel Erectors Association of Virginia and Carolinas, Inc.; Carolinas Roofing and Sheet Metal Contractors Association, Inc. and North Carolina Association of Plumbing, Heating and Cooling Contractors, Inc.*

EXUM, Chief Justice.

The question presented is whether plaintiff subcontractor is entitled to a materialmen's lien under Part 2 of Chapter 44A of our general statutes. The answer depends on whether plaintiff furnished materials at the site of improvement as contemplated by N.C.G.S. § 44A-18(1) and, if so, whether plaintiff complied with the notice requirements of N.C.G.S. § 44A-19. We conclude plaintiff complied with both provisions and affirm the Court of Appeals' decision that plaintiff is entitled to assert its lien.

The facts are not in dispute. On 20 July 1983, Contract Steel Sales, Inc. (Steel Sales) subcontracted with Freedom Construction Company (Freedom) to provide structural, reinforcing and fabricated miscellaneous steel in connection with Freedom's work as general contractor for E. I. Du Pont de Nemours and Company (Du Pont). The subcontract obligated Steel Sales to deliver fourteen categories of materials for a single lump-sum subcontract price.

In August 1983 Steel Sales began delivery of the materials. The first items delivered, wire mesh and reinforcing steel, were accepted by Freedom, incorporated into the improvement, and partial payment was made to Steel Sales on its subcontract.

The subcontract also called for Steel Sales to provide approximately twenty-three tons of structural and fabricated miscellaneous steel. On 28 September 1983 the entire twenty-three tons of steel were delivered to the site and were inspected by a Du Pont quality assurance inspector. Following Du Pont's inspection, Freedom refused to incorporate these materials into the improvement and informed Steel Sales that it believed defects existed in the steel itself. Thereafter, all the materials, except those already incorporated into the building, were returned to the Steel Sales plant for "reworking." Several weeks later a second Du Pont inspector traveled to the Steel Sales plant and inspected the steel.

Following the second inspection the steel was delivered by Steel Sales to the jobsite. Freedom and Du Pont again refused to allow the materials delivered by Steel Sales to be incorporated into the improvement.

On 11 November 1983 a discussion was held among representatives of Freedom, Du Pont and Steel Sales about reworking the steel a second time. As a result of this discussion all of the steel was taken to another company, Pine State Steel (Pine State), for reworking. However, the steel was not refabricated by Pine State, was not redelivered to the jobsite and was not used in the construction of the improvement. Instead, Pine State fabricated other steel which was used to erect the improvement. The twenty-three tons of steel furnished by Steel Sales were left at the Pine State plant.

On 6 December 1983, following Freedom's acceptance of the steel from Pine State, the president of Steel Sales wrote a letter to Du Pont claiming a lien on any funds owed by Du Pont to Freedom. This letter was received by Du Pont in the early part of December. Notwithstanding receipt of the letter, Du Pont did not withhold the $50,000 it owed on its contract with Freedom; and on 5 March 1984 Du Pont paid Freedom this amount in exchange for Freedom's release of all liens and claims against Du Pont.

On 18 April 1984 Steel Sales filed complaint against defendants based upon two claims for relief. The first claim for relief alleged that Freedom had breached its subcontract with Steel Sales by refusing to pay the contract amount of $50,008.91.[1] The second claim for relief was against Du Pont. Steel Sales alleged that "sums in excess of $50,008.91 are being retained by Du Pont and are owed by Du Pont to Freedom arising out of Freedom's general construction work and materials furnished to the Project." Steel Sales further alleged that a notice of claim of lien (i.e., the letter dated 6 December 1983) had been received by Du Pont and that Du Pont was personally liable to Steel Sales because Du Pont had paid Freedom despite the notice of claim of lien.

---

1. During the pendency of the action, defendant Freedom filed for bankruptcy under Chapter 7 of the United States Bankruptcy Code. Freedom appeared in this action pursuant to an order of the Bankruptcy Court granting Steel Sales' petition for relief from the automatic stay of creditors' proceedings.

Defendants answered Steel Sales' complaint. Freedom denied that Steel Sales had performed its subcontract. Du Pont generally denied all allegations that it had received a notice of a claim of lien from Steel Sales.

On 27 March 1986 the parties agreed to stipulations of fact and agreed to "waive a jury trial as to the issues of whether the letter mailed by Steel Sales is a valid notice of claim of lien under N.C.G.S. Sec. 44A-19 and whether Steel Sales is entitled to a lien under the provisions of Part II, Article II, Chapter 44A, North Carolina General Statutes." On 4 April 1986 the trial court, sitting without a jury, concluded that plaintiff was not entitled to a lien and that the letter of 6 December 1983 did not substantially comply with the notice requirements of N.C.G.S. § 44A-19. The Court of Appeals reversed.

I

[1] We first address the issue of whether Steel Sales, pursuant to its subcontract with Freedom, "furnished . . . materials at the site of the improvement" to Du Pont's property as contemplated by N.C.G.S. § 44A-18(1). We conclude it did.

N.C.G.S. § 44A-18(1), by which Steel Sales seeks to assert its lien, provides in pertinent part as follows:

(1) A first tier subcontractor who furnished labor or materials at the site of the improvement shall be entitled to a lien upon funds which are owed to the contractor with whom the first tier subcontractor dealt and which arise out of the improvement on which the first tier subcontractor worked or furnished materials.

In this case, it is uncontroverted that Steel Sales is the first tier subcontractor, Freedom is the contractor and Du Pont is the owner of the improvement. The subcontract obligated Steel Sales to deliver fourteen categories of materials for a single lump-sum subcontract price.

In August 1983 the first delivery of materials was accepted by Freedom and was incorporated into the improvement. These materials were accepted by defendants and plaintiff has been paid for them. The only materials at issue here are the twenty-three tons of structural and fabricated miscellaneous steel which were

delivered to the jobsite on 7 and 8 November 1983. For some reason, yet to be established in this litigation, this steel was removed from the site some time before Steel Sales sought to perfect its lien and was never incorporated into the improvement.[2]

Defendants contend that in order to meet the "furnishing" requirement under N.C.G.S. § 44A-18(1), the materials must be not only delivered to the site of the improvement but must also be incorporated into the improvement itself. At least, defendants argue, there can be no lien when, as here, the materials had been physically removed from the site at the time the lien was sought to be perfected. The Court of Appeals rejected these contentions, holding that materials are furnished within the meaning of N.C.G.S. § 44A-18(1) when, pursuant to a subcontract, materials are delivered to the site of improvement.

We agree with, and affirm, this holding. In *Queensboro Steel Corp. v. East Coast Machine & Iron Works*, 82 N.C. App. 182, 346 S.E. 2d 248, *disc. rev. denied*, 318 N.C. 508, 349 S.E. 2d 865 (1986), the Court of Appeals said:

> North Carolina's current mechanics' and materialmen's lien statutes apparently do not require actual incorporation of materials into the improvement . . . . *But see Fulp & Linville v. Kernersville Light and Power Company*, 157 N.C. 154, 72 S.E. 869 (1911) (interpreting an older statute that has since been repealed).

82 N.C. App. at 190, 346 S.E. 2d at 253. Additionally, an important commentary on our current statute states:

> If the materials are furnished at the site in accordance with the requisite contractual intent, the better rule seems to be that materials so furnished need not have become incorporated into the improvement in order for a mechanic's lien to arise.

Urban & Miles, "Mechanic's Liens for the Improvement of Real Property: Recent Developments in Perfection, Enforcement and Priority," 12 Wake Forest L. Rev. 283, 355 (1976).

---

2. We express no opinion on whether Steel Sales is entitled to recover against either Du Pont or Freedom pursuant to the subcontract. Nor do we decide the issue of whether the steel fabricated pursuant to the subcontract was defective or properly rejected by defendants.

We conclude that, just as actual incorporation into the improvement is not a statutory prerequisite, neither does the statute require that the materials be physically present on the site at the time notice of lien is given.

There can be many reasons why materials might not be physically present at such a time and not incorporated into the improvement, none necessarily inconsistent with full performance of the subcontract. The contractor, owner or both could have decided to substitute other materials. The materials could have been lost, misused or wrongfully rejected. The subcontractor should not have to bear the burden of demonstrating that these things occurred in order to be entitled to assert a lien. The lien only serves to secure payment if, in the later action to enforce the lien, the subcontractor can prove he properly performed under the contract.

> [T]he claimant-subcontractor should not have to bear the burden of loss, non-use or misuse of the materials furnished, nor should he be forced to refrain from enforcing his contract by taking back undamaged goods. . . . His *contractual performance* should be entitled to the security of a mechanic's lien.

*Id.*

The subcontractor must prove performance of his contract to enforce the lien, but he need not show such performance in order to assert his entitlement to a lien. For this entitlement, he need only show that the materials were delivered to the site of the improvement. Having made such a showing here, Steel Sales is entitled to its lien if it is properly perfected, a question we shall now proceed to address.

## II

In order to perfect a lien under N.C.G.S. § 44A-18, a first tier subcontractor must comply with the requirements of N.C.G.S. § 44A-19 and must send the owner a "Notice of Claim of Lien." Once the owner receives valid notice he is placed under a duty to retain funds subject to the lien. N.C.G.S. § 44A-20(a). If the owner pays the contractor after receiving a proper notice of claim of lien, the owner becomes an "obligor . . . personally liable" to the subcontractor for the amount owed. N.C.G.S. § 44A-20(b).

N.C.G.S. § 44A-18(6) provides that the "liens granted under this section are perfected upon the giving of notice in writing to the obligor as hereinafter provided and shall be effective upon the receipt thereof by such obligor." The statute which sets forth the requirements for giving notice is N.C.G.S. § 44A-19(a). It provides in pertinent part:

44A-19. Notice to Obligor.

(a) Notice of a claim of lien shall set forth:

    (1) the name and address of the person claiming the lien,

    (2) A general description of the real property improved,

    (3) The name and address of the person with whom the lien claimant contracted to improve real property,

    (4) The name and address of each person against or through whom subrogation rights are claimed,

    (5) A general description of the contract and the person against whose interest the lien is claimed, and

    (6) The amount claimed by the lien claimant under this contract.

(b) All notices of claims of liens by first, second or third tier subcontractors must be given using a form substantially as follows:

NOTICE OF CLAIM OF LIEN BY<br>FIRST, SECOND OR THIRD TIER SUBCONTRACTOR

To:

1. ................................, owner of property
    (Name and address)     involved.

2. ................................, general contractor.
    (Name and address)

3. ............................, first tier subcontractor
    (Name and address)    against or through whom subrogation is claimed, if any.

4. ........................................, second tier
    (Name and address)    subcontractor against or through whom subrogation is claimed, if any.

General description of real property where labor performed or material furnished:

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

General description of undersigned lien claimant's contract including the names of the parties thereto: . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

The amount of lien claimed pursuant to the above described contract: $ . . . . . . . . . . . . . .

The undersigned lien claimant gives this notice of claim of lien pursuant to North Carolina law and claims all rights of subrogation to which he is entitled under Part 2 of Article 2 of Chapter 44A of the General Statutes of North Carolina.

Dated . . . . . . . . . . . .

. . . . . . . . . . . . . , Lien Claimant

. . . . . . . . . . . . . . . . . . . . . . . . . .
(Address)

[2] The question here is whether a lien claimant is required to use the model statutory form set out above in order to perfect its lien. We think not and hold that deviation from the statutory form is permissible so long as all of the information set out in the statutory form is contained in the notice.

In construing materialmen's lien statutes, courts have recognized a distinction between the entitlement provisions on one hand and the perfection provisions on the other. *See Earp v. Vanderpool,* 160 W.Va. 113, 232 S.E. 2d 513 (1976); *Hough v. Zehirner,* 158 Ind. App. 409, 302 N.E. 2d 881 (1973); *Las Vegas Plywood and Lumber, Inc. v. D & D Enterprises,* 98 Nev. 378, 649 P. 2d 1367 (1982); *Republic Bank & Trust Co. v. Bohmar Minerals, Inc.,* 661 P. 2d 521 (Okla. 1983); *Lambert v. Newman,* 245 Ark. 125, 431 S.W. 2d 480 (1968). Most courts hold that once entitlement to a lien has been established, statutory requirements concerning

perfection must be liberally construed in favor of the lien claimant. *See generally*, 53 Am. Jur. 2d *Mechanics' Liens* §§ 23-24 at 538-43 (1970).

In addition to the foregoing rules of statutory construction, the statute itself requires that "notices of claims of liens by first, second or third tier subcontractors must be given using a form *substantially* as follows . . . ." (Emphasis added.) Under the statute a form is clearly contemplated, and a claimant places himself in peril by failing to make use of the statutory form. However in the past we have concluded that deviation from a statutory form is permissible so long as the content set out in the form is present. *Freeman v. Morrison*, 214 N.C. 240, 199 S.E. 2d 12 (1938). In *Freeman* a statutory model form of acknowledgment was prescribed. The statute required that "the form of acknowledgment shall be in substance" that of the statutory model. Although the statutory model form was not followed, we held that "[i]t is not necessary that the exact language of the statutory requirements be followed, provided the necessary facts are expressed in words of substantially equivalent import." *Id.* at 244, 199 S.E. 2d at 14.

[3] The letter by which plaintiff sought to perfect its lien states:

Dupont Company
P. O. Drawer Z
Fayetteville, N.C. 28302

Re: Dupont Co.
    MMF Process Building
    Fayetteville, N.C.

Gentlemen:

Pursuant to our agreement with Freedom Construction Co., 315 S. Moore St. Sanford, N.C. to furnish structural, fabricated miscellaneous steel and reinforcing steel for the Du Pont Co. MMF Process Building, Fayetteville, N.C. we have on November 7, 1983 actually furnished to the job site all structural steel.

The amount of $50,008.91 remaing [sic] due and owing to us and Freedom Construction Co. has in our opinion, wrongfully refused payment. Please take notice that we hereby claim a

lien in any and all funds owing from you to Freedom Const. to the extent of $50,008.91 and claim and reserve all of our rights under Chapter 44A of the North Carolina General Statute.

On receipt of this notice of claim of lien please confirm to us in writing that such funds have been withheld from Freedom Const. Co.

While we deem this action unfortunate in view of our desire to maintain our working relationship with you, we are taking this action in a timely manner to protect our legal right, and hope that a prompt settlement will be made. You will find attached a copy of our letter to Freedom Const. Co.

Very truly yours,

CONTRACT STEEL SALES, INC.

Philip A. Hutson
President

Encl.

cc: Freedom Const. Co.

Although the letter is not in the format set out in N.C.G.S. § 44A-19, it does clearly state that Du Pont "take notice that we hereby claim a lien . . . and reserve all of our rights under Chapter 44A of the North Carolina General Statute"; and the exact statutory language, "notice of claim of lien," is utilized in paragraph three of the letter. The letter contains all the information set out in the statutory form including the names and addresses of the parties to the subcontract, the description of the work encompassed by the subcontract, the amount claimed and a description of the project.

We conclude, therefore, that plaintiff has complied with the notice requirements of the statute.

Accordingly, the decision of the Court of Appeals is

Affirmed.

Justice MEYER dissenting.

I dissent from part II of the majority opinion, which holds that in order to perfect his lien, a lien claimant is not required to substantially comply with the model statutory form set forth in N.C.G.S. § 44A-19(b), so long as all of the information required by the form is contained in the notice. Even liberally construing the statute, it is quite clear that the legislative intent was that a form was not merely contemplated but required in order to perfect the lien.

The majority does not contend that our legislature lacks the power or authority to specifically require the substantial compliance with a form. Generally, the composition of our legislature includes numerous astute businessmen who are well aware that employees who handle incoming mail are easily trained to recognize a "notice of lien" form and to route it to the proper official for appropriate action. Such employees may not be so adept at reading and interpreting what appears to be ordinary correspondence and determining that somewhere within the items of correspondence is contained all of the information that is required on the form specified by the legislature. The form mandated by the statute requires a bold "all caps" heading that defies misinterpretation: "NOTICE OF CLAIM OF LIEN BY FIRST, SECOND OR THIRD TIER SUBCONTRACTOR." The form also requires that the signatory be designated "Lien Claimant." No extensive reading and no interpretation are required.

The majority recognizes that "[u]nder the statute a form is clearly contemplated." The statute provides in pertinent part "notices of claims of liens . . . *must* be given using a form substantially as follows." N.C.G.S. § 44A-19(b) (1984) (emphasis added). The intent of the legislature that, as a prerequisite to the validity of the notice, a form be used is inescapable. It is the "form" that must be substantially complied with and not simply its content, as the majority suggests.

Justice MITCHELL joins in this dissenting opinion.