PETE WALL PLUMBING CO., INC. v. SANDRA ANDERSON BUILDERS, INC.

[210 N.C. App. 338 (2011)]

contends that had the trial court properly calculated his retroactive child support obligation and properly credited his post-separation payments, the amount of child support which he paid would have been adequate and he would owe no arrearage. Until the issues of retroactive child support and classification, valuation, and distribution of the marital assets and liabilities have been properly determined upon remand, we cannot determine whether Mr. Robinson provided, or failed to provide, adequate child support. Thus, we must vacate the award of attorney's fees, and remand the issue for a new award based on appropriate findings of fact.

In summary, we affirm the order providing for Anson's child support from December 2009 until he reached the age of majority. The balance of the trial court's order is vacated and remanded for a determination with respect to equitable distribution of the parties' property, a proper award of alimony, determination of plaintiff's obligation for retroactive child support, if any, and attorney's fees.

Affirmed in part, Vacated in part, and Remanded.

Judges McGEE and ERVIN concur.

_____

PETE WALL PLUMBING CO., INC., PLAINTIFF-APPELLANT v. SANDRA ANDERSON BUILDERS, INC., SANDRA B. ANDERSON (GROAT), HOUSING AUTHORITY OF THE CITY OF GREENSBORO, WILLOW OAKS DEVELOPMENT, LLC, CAROLINA BANK, ANDREA M. BULLARD, CRYSTAL M. YOUNG, ALMA PICKARD, OCTAVIA T. LILES, EBONY M. WASHINGTON, MARCUS L. PURCELL AND WIFE, LAKEISHA R. PURCELL, DEFENDANT-APPELLEES

No. COA09-1449

(Filed 15 March 2011)

**1. Liens— motion to strike allegations—considered under lien statute—filing sufficient**

Plaintiff plumbing company's lien filings were sufficient to protect its interests, if they created a valid lien or a valid notice of lien, where they contained all of the information required by N.C.G.S. §§ 44A-12 and -19. Although defendant Anderson filed a motion to strike based only on N.C.G.S. § 1A-1, Rule 12(f), striking material allegations from the pleadings is not akin to reaching a final determination, and the discharge of statutory liens is governed by N.C.G.S. § 44A-16.

PETE WALL PLUMBING CO., INC. v. SANDRA ANDERSON BUILDERS, INC.

[210 N.C. App. 338 (2011)]

**2. Liens— plumbing supplies and services—contractor's property interest extinguished by sale**

The trial court properly ordered that plaintiff plumbing company's claims of lien be discharged where the action involved the construction of single family houses on property owned by the Housing Authority of Greensboro, with the construction managed through leases and subleases and financed through multi-party agreements. Upon completion, the houses were conveyed to private owners. The lien statutes provided plaintiff only a claim of lien to the extent of an owner's interest in the property; here, the builder's sublease had been extinguished by the sale to private owners before plaintiff began enforcement proceedings.

**3. Liens— notice of claim on funds—received by bank after sale of property**

Notices of a claim of lien on funds against a bank were correctly discharged where the properties for which services and supplies had been furnished were conveyed free of the bank's ownership interest before the notice of claim of lien on funds was received. Liability only attaches to funds after the notice of claim of lien on funds is received.

**4. Liens— consent judgment—discharge of lien—harmless error**

Any error by the trial court in discharging liens against a builder was harmless where plaintiff eventually entered into a consent judgment against the builder for the full amount it sought.

**5. Liens— extinguishment—foreclosure on property**

Carolina Bank's foreclosure of two properties extinguished plaintiff's claims of liens against those properties where Carolina Bank recorded deeds of trust on the lots before plaintiff provided labor and materials. Carolina Bank's deeds of trust were senior to plaintiff's claims of lien.

**6. Liens— notice of claim on funds—foreclosure—no evidence of payments for improvements**

The trial court erroneously discharged plaintiff's notices of claim of lien on funds where the record did not contain evidence about whether payments were made for improvements between receipt of the notices and the foreclosure. The issue was remanded to determine the issue of payments.

PETE WALL PLUMBING CO., INC. v. SANDRA ANDERSON BUILDERS, INC.

[210 N.C. App. 338 (2011)]

**7. Pleadings— allegations stricken—lien filings**

The trial court did not abuse its discretion by striking from a complaint by a plumbing company allegations regarding lien filings that the court correctly discharged. However, the court abused its discretion by striking allegations regarding a potentially viable lien on funds.

Judge STEELMAN concurring.

Appeal by plaintiff from order entered 22 April 2009 by Judge Ronald E. Spivey in Guilford County Superior Court. Heard in the Court of Appeals 13 April 2010.

*Smith, James, Rowlett & Cohen, L.L.P., by Seth R. Cohen and J. David James, for plaintiff-appellant.*

*Sharpless & Stavola, P.A., by Joseph P. Booth III, for defendant-appellee Housing Authority of the City of Greensboro.*

*Womble Carlyle Sandridge & Rice, PLLC, by Michael Montecalvo and Sarah L. Buthe, for defendant-appellee Willow Oaks Development, LLC.*

*Ward and Smith, P.A., by Thomas S. Babel, for defendant-appellees Carolina Bank, Andrea M. Bullard, Crystal M. Young, Ebony M. Washington, Marcus L. Purcell and Lakeisha R. Purcell.*

CALABRIA, Judge.

Pete Wall Plumbing Co., Inc. ("plaintiff") appeals the trial court's order (1) granting Sandra Anderson (Groat)'s motion to strike and (2) discharging plaintiff's Notices of and Claims of Lien. We affirm in part and reverse in part.

I. Background

From January through July 2008, plaintiff delivered plumbing supplies and services for the construction of six homes, located on lots 20, 25, 25B, 34, 37, and 54B of Willow Oaks-Zone B (collectively "the properties"), to defendant Sandra Anderson Builders, Inc. ("SAB").[1] The cost of the plumbing supplies and services provided to

---

1. SAB is now dissolved and not a party to this appeal.

PETE WALL PLUMBING CO., INC. v. SANDRA ANDERSON BUILDERS, INC.

[210 N.C. App. 338 (2011)]

the properties totaled $18,576.12.[2] SAB failed to pay plaintiff for these supplies and services.

At the time plaintiff provided plumbing supplies and services to the properties, they were owned by defendant Housing Authority of the City of Greensboro ("the Housing Authority"). The Housing Authority had entered into a ground lease ("the Ground Lease") covering the properties, along with numerous additional properties, with defendant Willow Oaks Development, LLC ("Willow Oaks"). Willow Oaks, in turn, individually subleased the properties, along with many others, to SAB ("the Ground Subleases" or "the Subleases").

Under the terms of the Ground Subleases, SAB was required to construct certain improvements on the properties; specifically, SAB was to construct single-family homes. In each of the Subleases, Willow Oaks and SAB acknowledged and agreed that SAB would be the owner of these improvements during the term of the Subleases. However, upon completion of the improvements on any lot, SAB was required to "convey the Improvements to a Homebuyer in accordance with the provisions set forth in the Master Ground Lease." At the end of the term of the Subleases, SAB was required to surrender the properties in "as-is" condition. Additionally, the Subleases specifically stated that SAB had no right to bind any interest of Willow Oaks to any lien or other security interest. The Subleases were officially recorded with the Guilford County Register of Deeds ("the Register of Deeds").

The construction of the homes was financed by defendant Carolina Bank. In order to secure this financing, the Housing Authority, Willow Oaks, SAB, and Carolina Bank entered into a Multiparty Agreement for each of the properties, whereby the Housing Authority and Willow Oaks agreed to subordinate their interests in the properties to Carolina Bank's deeds of trust in SAB's subleasehold interests in the properties ("the Multiparty Agreements"). Each of the Multiparty Agreements included a provision describing the duties of Carolina Bank, the Housing Authority, and Willow Oaks in the event of SAB's default on the loan. Essentially, in the event of

---

2. Plaintiff asserts in its brief that the debt resulting from SAB's failure to pay for the provision of supplies and services on the six properties at issue totals $22,376.12. However, our review of the record indicates that this amount includes a debt alleged for provision of materials to a seventh property, Lot 54. According to the record, the filing against this property was independently satisfied, and plaintiff filed a cancellation of its filing against Lot 54. Consequently, the sum of the debt claimed in plaintiff's filings for the properties at issue in the instant case actually totals $18,576.12.

PETE WALL PLUMBING CO., INC. v. SANDRA ANDERSON BUILDERS, INC.

[210 N.C. App. 338 (2011)]

default, Carolina Bank could (1) elect to assume the rights and responsibilities of SAB (*i.e.*, become the sublessee) or (2) force the Housing Authority to choose between either (") paying the amount due under the loan or (b) transferring to Carolina Bank, upon the payment of $15,000.00, the interests of the Housing Authority and Willow Oaks in the subject property. The Multiparty Agreements were officially recorded with the Register of Deeds.

On 3 July and 11 July 2008, plaintiff filed six "Notices of and Claims of Lien" on each of the respective properties ("the filings" or "plaintiff's filings"), which were purported to be filed "pursuant to Article 2 of Chapter 44A of the North Carolina General Statutes." The filings were given file numbers 08 CVM 333, 345-348 and 350 by the clerk of court. Each of plaintiff's filings alleged that plaintiff had provided, pursuant to a contract with SAB, "plumbing, labor, supplies and or/materials" for the construction of real property improvements located on the properties. While there was some variation in the exact dates the labor and/or materials were provided to the individual properties, the filings all referenced labor and/or materials that were provided between January and April 2008. The specific dates for each lot, according to plaintiff's filings, were as follows:

| File Number | Lot Number: | Date Materials First Provided: | Date Materials Last Provided: |
|---|---|---|---|
| 08 CVM 333 | Lot 37 | 9 January 2008 | 6 March 2008 |
| 08 CVM 345 | Lot 20 | 29 February 2008 | 15 April 2008 |
| 08 CVM 346 | Lot 34 | 24 January 2008 | 31 March 2008 |
| 08 CVM 347 | Lot 25B | 31 January 2008 | 31 March 2008 |
| 08 CVM 348 | Lot 25 | 29 January 2008 | 25 March 2008 |
| 08 CVM 350 | Lot 54B | 2 January 2008 | 14 March 2008 |

At the time plaintiff's filings were made, four of the properties had been conveyed by general warranty deed from the Housing Authority and SAB: (1) lot 54B was conveyed to defendant Ebony M. Washington (deed recorded 28 January 2008); (2) lot 25B was conveyed to defendants Marcus and Lakeisha Purcell (deed recorded 1 February 2008); (3) lot 25 was conveyed to defendant Andrea M. Bullard (deed recorded 10 April 2008); and (4) lot 34 was conveyed to defendant Crystal M. Young (deed recorded 17 April 2008).[3] Each deed to the private owners included a clause which provided that the

_____

3. Ebony M. Washington, Marcus and Lakeisha Purcell, Crystal M. Young, and Andrea M. Bullard will be collectively referred to as "the private owners."

PETE WALL PLUMBING CO., INC. v. SANDRA ANDERSON BUILDERS, INC.

[210 N.C. App. 338 (2011)]

Housing Authority and SAB released the conveyed property from the Ground Lease, its respective Ground Sublease, and its respective Multiparty Agreement. Additionally, the deeds stated that the Ground Lease, Ground Sublease, and Multiparty Agreement were expressly terminated "and shall have no further force or effect with respect to the property" conveyed in the deed.

On 29 August 2008, plaintiff filed a "Complaint and Action to Enforce Lien" against SAB, Sandra B. Anderson (Groat), the Housing Authority, Willow Oaks, Carolina Bank, and the private owners (collectively "defendants"). In the complaint, plaintiff alleged, *inter alia*, that it had valid and enforceable liens against the properties. In addition to the materialman's liens, the complaint also sought an "equitable lien" against the interests of the Housing Authority and Willow Oaks. Furthermore, the complaint alleged that plaintiff was entitled to money damages from SAB, Sandra Anderson (Groat) individually, the Housing Authority, and Willow Oaks. Plaintiff's prayer for relief requested, *inter alia*, that the trial court enforce its liens and order a sale of the properties.

On 16 September 2008, defendant Sandra Anderson (Groat) filed a motion to strike pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(f). The motion to strike requested that the trial court "strike the allegations regarding Notice of and Claim of Lien and the Notices of and Claims of Lien . . . as referenced in the Complaint and that the Court award her such other and further relief as to the Court may seem just and proper." None of the other defendants joined in the motion to strike.

On 8 October 2008 and 2 February 2009, the trial court conducted separate hearings on the motion to strike. Plaintiff was represented by different counsel at the different hearings. At the first hearing, plaintiff's counsel argued that the filings constituted valid notices of claim of lien on funds pursuant to N.C. Gen. Stat. § 44A, Article 2, Part 2. At the second hearing, plaintiff's counsel argued that the filings constituted valid claims of lien pursuant to N.C. Gen. Stat. § 44A, Article 2, Part 1.

On 4 February 2009, the two unsold properties, lots 20 and 37, were foreclosed upon ("nd subsequently purchased) by Carolina Bank. Carolina Bank's deeds of trust were executed and filed before plaintiff had provided labor and/or materials to these lots.

On 22 April 2009, the trial court issued an order stating that each of the filings that plaintiff sought to enforce was invalid. In addition,

PETE WALL PLUMBING CO., INC. v. SANDRA ANDERSON BUILDERS, INC.

[210 N.C. App. 338 (2011)]

the trial court's order struck from plaintiff's complaint a number of allegations including, *inter alia*, each assertion that plaintiff had a valid lien on the properties. The order further stated that "[u]pon the filing of this order with the Clerk of Superior Court, the Notices of and Claims of Lien [for all the properties] shall be marked as discharged, pursuant to N.C.G.S. § 44A-16."

As a result of the trial court's order, plaintiff voluntarily dismissed, with prejudice, all of its claims against Carolina Bank and voluntarily dismissed, without prejudice, some of its claims against Sandra Anderson (Groat). In addition, the trial court later dismissed plaintiff's claims against the Housing Authority, Willow Oaks and the private owners. On 2 June 2009, the trial court entered a consent order for summary judgment against SAB for $49,913.11. After final judgment was entered on the remaining claims on 27 July 2009, plaintiff appealed the trial court's 22 April 2009 order.

## II. Discharge of Notices of and Claims of Lien

[1] Plaintiff argues that the trial court erred by discharging the filings because they complied with all relevant statutory requirements. Plaintiff contends that the filings were valid and enforceable against SAB's subleasehold interest in each of the properties.

As an initial matter, it is necessary to address the procedural irregularities which led to the trial court's order. The trial court's order granted two forms of relief: the discharge of the liens pursuant to N.C. Gen. Stat. § 44A-16 and the striking of any references to the liens from plaintiff's complaint pursuant to Rule 12(f). However, the motion to strike filed by Sandra Anderson (Groat) was based solely upon Rule 12(f). Moreover, since the motion to strike was only filed by Sandra Anderson (Groat) in her individual capacity, it is not clear from the record why the trial court granted relief to the remaining defendants when it granted the motion.[4]

A final determination on the merits is not the relief contemplated by a defendant filing a motion to strike pursuant to Rule 12(f). Rule 12(f), by its own terms, only allows the trial court to strike matters from "*any pleading* any insufficient defense or any redundant, irrelevant, immaterial, impertinent, or scandalous matter." N.C. Gen. Stat. § 1A-1, Rule 12(f) (2009) (emphasis added). Thus, a ruling on a Rule

---

4. The record on appeal does not contain a transcript from either of the hearings on the motion to strike, and as a result, we are unable to determine which additional defendants, if any, participated in these hearings.

PETE WALL PLUMBING CO., INC. v. SANDRA ANDERSON BUILDERS, INC.

[210 N.C. App. 338 (2011)]

12(f) motion should not have been used as the basis for discharging plaintiff's filings upon the filing of the order, because striking material from the pleadings is not akin to reaching a final determination of the matter.

The discharge of statutory liens is instead governed by N.C. Gen. Stat. § 44A-16 (2009). Indeed, the trial court's order stated that it was discharging the liens pursuant to that statute. N.C. Gen. Stat. § 44A-16 lists six methods by which a filed lien can be discharged. Subsection 4 is the relevant method of discharge in the instant case. This subsection states:

> Any claim of lien on real property filed under this Article may be discharged by any of the following methods:
>
> . . .
>
> > (4) By filing in the office of the clerk of superior court the original or certified copy of a judgment or decree of a court of competent jurisdiction *showing that the action by the claimant to enforce the claim of lien on real property has been dismissed or finally determined adversely to the claimant.*

N.C. Gen. Stat. § 44A-16 (2009) (emphasis added). Typically, "[t]his subsection requires that a judgment be filed showing that the action to perfect a lien has been dismissed or otherwise decided adversely to the lien claimant in order to discharge the lien." *Newberry Metal Masters Fabricators, Inc. v. Mitek Indus., Inc.*, 333 N.C. 250, 251, 424 S.E.2d 383, 384 (1993). The trial court's order decreed that, "upon the filing of this order with the Clerk of Superior Court, the Notices of and Claims of Lien . . . shall be marked as discharged, pursuant to N.C. Gen. Stat. § 44A-16[.]" Since the trial court's order appears to comply with N.C. Gen. Stat. § 44A-16 (4) and plaintiff does not contend that this portion of the trial court's order was not validly entered, we will review the portion of the trial court's order which directed that plaintiff's filings be discharged.

The materialman's lien statute has its genesis in our State Constitution, which requires that "[t]he General Assembly shall provide by proper legislation for giving to mechanics and laborers an adequate lien on the subject-matter of their labor." N.C. Const. art. X, § 3. The requirement for a materialman's lien statute was satisfied by the enactment of Chapter 44A of our General Statutes ("Chapter 44A"). When interpreting Chapter 44A, our Supreme Court has made clear that

PETE WALL PLUMBING CO., INC. v. SANDRA ANDERSON BUILDERS, INC.

[210 N.C. App. 338 (2011)]

> [t]he materialman's lien statute is remedial in that it seeks to protect the interests of those who supply labor and materials that improve the value of the owner's property. A remedial statute must be construed broadly in the light of the evils sought to be eliminated, the remedies intended to be applied, and the objective to be attained.

*O & M Indus. v. Smith Eng'r Co.*, 360 N.C. 263, 268, 624 S.E.2d 345, 348 (2006) (internal quotations and citations omitted).

Article 2 of Chapter 44A contains two parts: Part 1 of Article 2 ("Part 1") governs the "Liens of Mechanics, Laborers, and Materialmen Dealing with Owner." It is intended to govern the rights of contractors and materialmen who deal directly with the owner of the subject property. Specifically, Part 1 entitles such mechanics, laborers, and materialmen to a lien on an owner's property in order to ensure they are compensated for their work and/or materials, so long as they follow the proper procedure in the statute, including the filing of a "claim of lien." N.C. Gen. Stat. § 44A-8 (2009). A suggested format for a claim of lien is contained in N.C. Gen. Stat. § 44A-12 (2009).

In contrast, Part 2 of Article 2 ("Part 2") governs the "Liens of Mechanics, Laborers, and Materialmen Dealing with One Other Than Owner." Part 2 is intended to govern the rights of subcontractors and delineate their priority in the funds which are due to the contractor. *See* N.C. Gen. Stat. §§ 44A-8 and -18 (2009). Specifically, it entitles a subcontractor to a lien on funds paid to the contractor or subcontractor with whom it had dealt for the improvements for which the subcontractor had provided labor, materials, or rental equipment. Part 2 requires the subcontractor to follow specific procedures, including serving the party the subcontractor dealt with a "notice of claim of lien upon funds." N.C. Gen. Stat. § 44A-20 (2009). A suggested format for a notice of claim of lien upon funds is contained in N.C. Gen. Stat. § 44A-19 (2009).

In the instant case, SAB was both: (1) an owner of the properties under Part 1, by virtue of the Subleases, *see* N.C. Gen. Stat. § 44A-7 ("An 'owner' is a person who has an interest in the real property improved and for whom an improvement is made and who ordered the improvement to be made."); and (2) a contractor under Part 2, based upon the language in the Subleases requiring it to make improvements upon the properties. *See* N.C. Gen. Stat. § 44A-17 (" 'Contractor' means a person who contracts with an owner to improve real property."). Plaintiff's filings indicate that its counsel

PETE WALL PLUMBING CO., INC. v. SANDRA ANDERSON BUILDERS, INC.

[210 N.C. App. 338 (2011)]

attempted to ensure that his client received the protections of Parts 1 and 2 by filing an amalgamation of the forms contained in Parts 1 and 2, titling each of plaintiff's filings as a "Notice of *and* Claim of Lien" and including substantially all of the information contained on each statutory form.

A claimant utilizing either a claim of lien or a notice of claim of lien on funds is not required to use the model statutory form and "deviation from the statutory form is permissible so long as all of the information set out in the statutory form is contained" within the filing. *Contract Steel Sales, Inc. v. Freedom Const. Co.*, 321 N.C. 215, 222, 362 S.E.2d 547, 551 (1987). However, a claim of lien and a notice of claim of lien on funds each require specific information in order to be valid. The major difference between the two is that a claim of lien "need only identify the owner, the claimant, and the party with which the claimant contracted[,]" while a notice of claim of lien "must identify all the parties in the 'contractual chain' between the claimant and the owner." *Universal Mechanical v. Hunt*, 114 N.C. App. 484, 488, 442 S.E.2d 130, 132 (1994). The specific requirements for a claim of lien affecting title to real property are

> intended to place 'the world' on notice of the claim. Such notice must clearly delineate the tiered relationships in which the claimant is involved. This is so the owner may understand how the lien has arisen, and also so a title-searcher may ascertain which entities are potential claimants and how each is connected to the real estate.

*Cameron & Barkley Co. v. American Insurance Co.*, 112 N.C. App. 36, 45, 434 S.E.2d 632, 637 (1993).

Reviewing plaintiff's filings, it appears that all of the information required by N.C. Gen. Stat. §§ 44A-12 and -19 is contained within. In addition, the filings contain enough information to allow a title searcher to "ascertain which entities are potential claimants and how each is connected to the real estate." *Id.* Thus, plaintiff's filings were sufficient to protect its rights under both parts of Article 2 of Chapter 44A. Nonetheless, it must still be determined whether plaintiff's filings actually created a valid claim of lien under Part 1 or a valid notice of claim of lien on funds under Part 2.

A. The Private Owners

The private owners argue that any claims of liens or notices of claim of lien on funds filed against their properties were invalid

PETE WALL PLUMBING CO., INC. v. SANDRA ANDERSON BUILDERS, INC.

[210 N.C. App. 338 (2011)]

because they each received general warranty deeds that cancelled the interests of SAB in their properties before plaintiff's filings were made. We agree.

### 1. Claims of Lien

**[2]** Our Supreme Court has explicitly approved the judicial enforcement of a materialman's lien against a leasehold ("nd, by extension, a subleasehold) interest in real property, when the enforcement is completed before the interest terminates. *See Asheville Woodworking Co. v. Southwick*, 119 N.C. 611, 615, 26 S.E. 253, 254 (1896) (A materialman's lien on a leasehold interest "can be levied upon and sold under execution. The mechanic's lien is executionary in its nature, operation, and effect, and, like other attaching liens, it gives cause of action."); *Weathers v. Cox*, 159 N.C. 575, 576, 76 S.E. 7, 8 (1912) (A materialman's lien "attaches to a lessee's leasehold estate, subject to all the conditions of the lease . . . .").

However, a claim of lien is only valid "to the extent of the interest of the owner." N.C. Gen. Stat. § 44A-9 (2009). In the instant case, plaintiff did not begin enforcement proceedings on lots 25, 25B, 34, and 54B until after SAB's ownership interests in these lots as sublessee had been extinguished by the sale and conveyance of the properties to the private owners. Upon the termination of this interest, by a conveyance which was explicitly required by the terms of the Subleases filed with the Register of Deeds, "the property revert[ed] to the lessor, free from the lien of mechanics, unless these [we]re in some way protected by the statute." *Id.* Since our statutes only provide plaintiff with a claim of lien to the extent of an owner's interest in a property, plaintiff possessed no statutory protection in the private owners' properties after SAB's interest in each property was terminated. Thus, the trial court properly ordered plaintiff's claims of lien against lots 25, 25B, 34, and 54B, filed in 08 CVM 346-48 and 350, to be discharged.

As the facts of the instant case demonstrate, the combination of the time limited nature of a leasehold interest and the time required to judicially enforce a materialman's lien effectively makes the protections of a claim of lien against a leasehold interest almost theoretical for shorter-termed leases. However, this result is necessitated by previous decisions of our Supreme Court and by the language of Chapter 44A of our General Statutes. It was ultimately plaintiff's decision to furnish materials to an entity with only a time-limited interest in the properties. The extent and terms of SAB's inter-

**PETE WALL PLUMBING CO., INC. v. SANDRA ANDERSON BUILDERS, INC.**

[210 N.C. App. 338 (2011)]

est in the properties were filed with the Register of Deeds and were thus a matter of public record, readily ascertainable by plaintiff. As our Supreme Court has previously admonished a party similarly situated to plaintiff,

> [i]f [plaintiff was] unwilling to do the work and furnish the material upon . . . credit and intended to look to the security provided by statute, ordinary prudence required that [plaintiff] exercise that degree of diligence which would enable them to ascertain the status of the title to the land upon which the building was to be erected and to obtain the approval or procurement of the owners. Their loss must be attributed to their failure so to do.

*Brown v. Ward*, 221 N.C. 344, 347-48, 20 S.E.2d 324, 326-27 (1942).

### 2. Notices of Claim of Lien on Funds

[3] In addition, the sale and conveyance of the private owners' properties significantly impacted plaintiff's filed notices of claim of lien on funds. Under Part 2, a claim of lien on funds does not attach to any funds until after it is received by an obligor:

> *Upon receipt of the notice of claim of lien upon funds* provided for in this Article, the obligor shall be under a duty to retain any funds subject to the lien or liens upon funds under this Article up to the total amount of such liens upon funds as to which notices of claims of lien upon funds have been received.

N.C. Gen. Stat. § 44A-20 (") (2009) (emphasis added). In Part 2, an " 'Obligor' means an owner, contractor or subcontractor in any tier who owes money to another as a result of the other's partial or total performance of a contract to improve real property." N.C. Gen. Stat. § 44A-17(3) (2009). Thus, at the time plaintiff provided plumbing services and supplies to what would later become the private owners' properties, both SAB and Carolina Bank, by virtue of their ownership interests in the properties, qualified as obligors under the statute. *See Neil Realty Co. v. Medical Care, Inc.*, 110 N.C. App. 776, 778, 431 S.E.2d 225, 226 (1993) ("North Carolina is considered a title theory state with respect to mortgages, where a mortgagee does not receive a mere lien on mortgaged real property, but receives legal title to the land for security purposes.").

However, when these properties were conveyed to the private owners in fee simple, they were conveyed free of Carolina Bank's deeds of trust. Carolina Bank no longer had an ownership interest in

PETE WALL PLUMBING CO., INC. v. SANDRA ANDERSON BUILDERS, INC.

[210 N.C. App. 338 (2011)]

these properties and was no longer disbursing any funds for any improvements to these properties. Since liability only attaches to funds *after* the notice of claim of lien on funds is received, Carolina Bank had no duty to "retain any funds subject to the lien or liens upon funds" pursuant to its extinguished deeds of trust. N.C. Gen. Stat. § 44A-20(a) (2009). Consequently, Carolina Bank was not subject to any liability under plaintiff's filings. Thus, the trial court correctly discharged the notices of claim of lien on funds against Carolina Bank.

[4] With regards to SAB, the record is silent on whether it failed to comply with N.C. Gen. Stat. § 44A-20 after it received notice of plaintiff's filings. However, such information is immaterial, because plaintiff eventually received a judgment against SAB for the full amount it sought in its complaint. This judgment was consented to by SAB and was not appealed. Therefore, even assuming, *arguendo*, that plaintiff possessed a valid lien on funds paid by SAB, so that the trial court's order discharging the lien on funds would constitute error, that error would be harmless. Plaintiff could not have received a larger judgment if it had been permitted to pursue a lien on funds against SAB than it had already received by virtue of the consent judgment. The assignments of error regarding plaintiff's filings filed against the private owners' properties are overruled.

### B. Lots 20 and 37

On 4 February 2009, Carolina Bank foreclosed upon its deeds of trust on lots 20 and 37. Carolina Bank recorded a deed of trust on lot 20 on 6 February 2008. Plaintiff's filing alleged that labor and/or materials were first provided to lot 20 on 29 February 2008, after the deed of trust was recorded. Similarly, plaintiff's filing on lot 37 alleged that labor and/or materials were first provided to that lot on 9 January 2008, after Carolina Bank recorded a deed of trust on 1 November 2007.

### 1. Claims of Lien

[5] "A claim of lien on real property granted by this Article shall relate to and take effect from the time of the first furnishing of labor or materials at the site of the improvement by the person claiming the claim of lien on real property." N.C. Gen. Stat. § 44A-10 (2009). Since Carolina Bank recorded deeds of trust on lots 20 and 37 before plaintiff provided labor and/or materials to them, Carolina Bank's deeds of trust were senior to plaintiff's claims of lien.

Long settled case law holds, [t]he sale [under a mortgage or deed of trust] . . . cuts out and extinguishes all liens, encumbrances and

PETE WALL PLUMBING CO., INC. v. SANDRA ANDERSON BUILDERS, INC.

[210 N.C. App. 338 (2011)]

junior mortgages executed subsequent to the mortgage containing the power. Ordinarily, all encumbrances and liens which the mortgagor or trustor imposed on the property subsequent to the execution and recording of the senior mortgage or deed of trust will be extinguished by sale under foreclosure of the senior instrument.

*In re Foreclosure of Lien by Ridgeloch Homeowners Ass'n,* 182 N.C. App. 464, 469, 642 S.E.2d 532, 536 (2007) (internal quotations and citations omitted). Therefore, foreclosure by Carolina Bank of these two properties extinguished plaintiff's claims of lien against lots 20 and 37. Because plaintiff's lien interests resulting from the claims of liens filed on lots 20 and 37, in file numbers 08 CVM 333 and 345, had been extinguished, the trial court properly ordered these claims of lien to be discharged.

## 2. Notices of Claim of Lien on Funds

[6] However, a notice of claim of lien on funds only attaches to "funds that are owed to the contractor with whom the . . . subcontractor dealt and that arise out of the improvement on which the . . . subcontractor worked or furnished materials." N.C. Gen. Stat. § 44A-18 (2009). A lien on funds does not attach to real property, and thus the foreclosures of lots 20 and 37 had no effect on these filings. The record contains no evidence as to whether Carolina Bank made any payments to SAB for improvements on lots 20 and 37 between receiving plaintiff's notices of claim of lien on funds on 3 and 11 July 2008 and the foreclosure of those lots on 4 February 2009. Without this evidence, it was error for the trial court to discharge plaintiff's notices of claim of lien on funds on lots 20 and 37 in 08 CVM 333 and 345. That portion of the trial court's order is reversed and remanded for further proceedings in order to determine what payments, if any, Carolina Bank made to SAB for improvements between 3 and 11 July 2008 and 4 February 2009.[5]

## V. Motion to Strike

[7] Plaintiff finally argues that the trial court erred by granting the motion to strike any reference to the Liens in plaintiff's complaint. Rule 12(f) states:

---

5. As previously noted, the erroneous discharge of any lien on funds against SAB would be harmless, and thus we do not disturb the trial court's order discharging the notice of claim of lien on funds for improvements on lots 20 and 37 against SAB.

**PETE WALL PLUMBING CO., INC. v. SANDRA ANDERSON BUILDERS, INC.**

[210 N.C. App. 338 (2011)]

Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 30 days after the service of the pleading upon him or upon the judge's own initiative at any time, the judge may order stricken from any pleading any insufficient defense or any redundant, irrelevant, immaterial, impertinent, or scandalous matter.

N.C. Gen. Stat. § 1A-1, Rule 12(f) (2009). "Rule 12(f) motions are addressed to the sound discretion of the trial court and its ruling will not be disturbed absent an abuse of discretion." *Reese v. City of Charlotte*, 196 N.C. App. 557, 567, 676 S.E.2d 493, 499 (2009) (internal quotations and citation omitted). However, "[m]atter should not be stricken unless it has no possible bearing upon the litigation. If there is any question as to whether an issue may arise, the motion [to strike] should be denied." *Id.*

In the instant case, plaintiff's complaint sought to enforce its filings of both a claim of lien and a notice of claim of lien on funds against all of the properties. The trial court's order struck all allegations regarding these filings. Since the trial court correctly discharged all of plaintiff's claims of lien, it did not abuse its discretion by striking any allegations related to these claims of lien.

However, since there was still a potentially viable lien on funds that may have been distributed by Carolina Bank for improvements on lots 20 and 37, the trial court abused its discretion by striking the allegations in plaintiff's complaint which related to Carolina Bank. That portion of the trial court's order is reversed.

## VI. Conclusion

Plaintiff argued only that its filings were valid against SAB's subleasehold interest in each of the properties. Because SAB's subleasehold interest in lots 25, 25B, 34, and 54B had been extinguished by general warranty deeds to the private owners, as explicitly contemplated by the Subleases, the trial court properly discharged plaintiff's notices of and claims of lien filed in 08 CVM 346-48 and 08 CVM 350. That portion of the trial court's order is affirmed.

Additionally, Carolina Bank's foreclosure of its deeds of trust on lots 20 and 37 extinguished plaintiff's alleged junior claims of lien. Thus, the trial court properly discharged plaintiff's claims of lien filed in 08 CVM 333 and 345, and that portion of the trial court's order is also affirmed. However, since there was no evidence in the record

PETE WALL PLUMBING CO., INC. v. SANDRA ANDERSON BUILDERS, INC.

[210 N.C. App. 338 (2011)]

regarding what funds, if any, may have been distributed by Carolina Bank for improvements on lots 20 and 37 after it received notice of plaintiff's filings, the trial court erred by discharging the notices of claim of lien on funds against Carolina Bank in 08 CVM 333 and 345. That portion of the trial court's order is reversed.

The trial court did not abuse its discretion by striking the allegations in plaintiff's complaint that referred to discharged claims of lien in 08 CVM 333, 345-48, and 350 and notices of claim of lien on funds filed in 08 CVM 346-48 and 350. That portion of the trial court's order is affirmed. However, because there was no evidence which would allow the trial court to discharge the notices of claim of lien on funds against Carolina Bank in 08 CVM 333 and 345, the trial court abused its discretion in striking plaintiff's allegations against Carolina Bank. That portion of the trial court's order is reversed.

Affirmed in part and reversed in part.

Judge HUNTER, Jr., Robert N. concurs.

Judge STEELMAN concurs with separate opinion.

STEELMAN, Judge concurring.

I concur in the majority opinion. It carefully and thoroughly analyzes each of the transactions involved and reaches the correct legal conclusions under the present state of our statutory and case law.

I write separately because I am concerned that the present state of our law does not provide adequate protection to suppliers of labor and materials as envisioned by Article X, section 3 of the North Carolina Constitution. In addition, the increasingly complex real estate arrangements now being used make it virtually impossible for a supplier of labor or materials to protect themselves under our lien laws.

## I. Constitutional Provisions

Article X, section 3 of the North Carolina Constitution provides:

Sec. 3. Mechanics' and laborers' liens.

The General Assembly shall provide by proper legislation for giving to mechanics and laborers an adequate lien on the subject-matter of their labor. The provisions of Sections 1 and 2 of this

Article shall not be so construed as to prevent a laborer's lien for work done and performed for the person claiming the exemption or a mechanic's lien for work done on the premises

The General Assembly enacted Article 2 of Chapter 44A of the General Statutes to give effect to this Constitutional provision. *See Steel Corp. v. Brinkley*, 255 N.C. 162, 164, 120 S.E.2d 529, 531 (1961) ("Our Constitution contains a mandate directing the General Assembly to enact legislation to give mechanics and laborers a lien on the subject matter of their labor."); *Smith & Associates v. Properties, Inc.*, 29 N.C. App. 447, 449, 224 S.E.2d 692, 693 (1976) ("North Carolina's Lien Law is mandated by Article X, Section 3, of our State Constitution . . . ."). The purpose of the materialman's lien statute is to "protect the interest of the contractor, laborer or materialman." *Embree Construction Group v. Rafcor, Inc.*, 330 N.C. 487, 492, 411 S.E.2d 916, 920 (1992); *see also Carolina Builders Corp. v. Howard-Veasey Homes, Inc.*, 72 N.C. App. 224, 229, 324 S.E.2d 626, 629 (stating that the purpose of Article 2 is "to protect the interest of the supplier in the materials it supplies; the materialman . . . should have the benefit of materials that go into the property and give it value." (citation omitted)), *disc. review denied*, 313 N.C. 597, 330 S.E.2d 606 (1985).

## II. Contractor as Lessee

In the instant case, the property was owned by the Housing Authority, which leased the property to Willow Oaks, which subleased the property to SAB. Plaintiff supplied labor and materials to SAB. Any lien is valid "to the extent of the interest of the owner." N.C. Gen. Stat. § 44A-9 (2009). In a lease situation, such as that before this Court, the lien protection of the supplier of labor and materials is illusory. The lien can only attach to the extent of the sublessee's interest, and this evaporates upon expiration of the lease. I agree that this result is mandated by the Supreme Court decision in *Brown v. Ward*, 221 N.C. 344, 20 S.E.2d 324 (1942). However, I believe that such a holding does not provide suppliers of labor and materials with "an adequate lien" as mandated by our Constitution. The Supreme Court should reconsider its holding in *Brown* and the General Assembly should consider revising the provisions of Chapter 44A to prevent this unjust result.

## III. Complex Real Estate Agreements

In the instant case, a series of complex agreements were executed to achieve two purposes: (1) the erection of dwellings upon the

IN RE L.H.

[210 N.C. App. 355 (2011)]

lots owned by the Housing Authority; and (2) by contract to eliminate the possibility of any lien ever attaching to the lots and improvements in question.

Where it is clear that the principal purpose of the agreements was the construction of improvements upon real estate to the joint benefit of the owner, the lessee, and the sublessee, those parties should be deemed to be joint venturers, and the clauses in the leases prohibiting the lessee and sublessee from causing any lien to attach to the lots be declared void as against public policy.

If such provisions in leases and subleases are enforced by the courts, then they will effectively eviscerate the constitutionally protected lien rights of laborers and materialmen.